## H. E. KING v. D. H. POPE.

(Filed 6 April, 1932.)

**1. Highways B f—Violation of safety statute is negligence per se and question of proximate cause is ordinarily for jury.**

The violation of a statute enacted for the safety of those driving upon the highway is negligence *per se*, and when such violation is admitted or established the question of proximate cause is ordinarily for the jury. N. C. Code, 1931 (Michie), 2621(45), 2621(46), 2621(51), 2621(54), 2621(55).

**2. Highways B k—Failure of guest to demand to be let out of car held not contributory negligence as a matter of law.**

Where the evidence discloses that the plaintiff was a guest in the defendant's car on a trip to another city and that the defendant on the return trip was driving in a reckless manner in violation of the speed limit and driving on the wrong side of the road and in turning curves at a dangerous rate of speed, and that the plaintiff repeatedly remonstrated with the defendant's driving and that soon thereafter the car turned over while the defendant was attempting to take a curve at a dangerous rate of speed, causing injury to the plaintiff: *Held*, under the facts and circumstances of this case the plaintiff's failure to demand that the defendant stop the car and let him out was not contributory negligence as a matter of law, and the issue was properly submitted to the jury under instructions which were free from error, and *held further*, if the defendant's conduct was wilful and wanton the plea of contributory negligence could not avail him.

APPEAL by defendant from *Cranmer, J.*, and a jury, at August Term, 1931, of WAYNE. No error.

This is an action for actionable negligence, brought by plaintiff against the defendant alleging damage. The defendant denied negligence and set up the plea of contributory negligence.

The plaintiff (Horace E. King) is a mechanical engineer, about 61 years old, and lives in Goldsboro, N. C. L. S. Hadley is a merchant and lives in Wilson, N. C. D. H. (Dave) Pope lives in Raleigh, N. C. The plaintiff, King, and Hadley were going to Winston-Salem to attend the fair and a banquet to be given by Mr. Reynolds. They were invited by Pope to go in his 77 Chrysler sedan. They arrived in Winston-Salem on Tuesday night, 7 October, 1931, about dark, attended the banquet and the next day went to the fair, and left there that evening, Wednesday, 8 October, just before dark. Pope was at the wheel of the car, sitting beside him was Hadley and plaintiff was sitting on the back seat. Plaintiff describes the wreck as follows: "The first recollection I got of approaching Hillsboro was when the tires gave me first warning when

the car started to turn around. Before we got there he (Pope) was driving at a pretty good gait and I remonstrated with him, that I wouldn't take the curve around the corners so fast, that a Chrysler was notoriously light behind and at the next corner he said 'You see that takes as good as any car you ever saw,' and I said 'I haven't ever seen one but what would turn around behind when you take a corner fast,' and I don't like to take them so fast, we have got plenty of time,' and at Burlington I got after him again, and he said 'Why don't you drive?' and I said 'I don't know anything about a Chrysler and don't know the road, and it is your car and it would be safer for you to drive than me, for I am off of my beat.' He was going around 60 the biggest part of the time, 55 or 60. The speed was plenty fast when that thing came around, when the tires squealed. The road was dry and when the tires started to hollering I looked up and saw the car was over the white line on the left-hand side of the road and was still going; it wasn't all of the car over, but half or more was on the wrong side of the curve, showing the car was going on the outer side of the curve and the tires were hollering, 'murder.' He probably might have come to the curve on his side of the road, I don't say anything about that because I didn't have anything to call my attention to look until I heard the tires and when I heard the tires the car was going that way and was still going and the car was over the white line; I don't know how it hit. When I waked up I was in the Durham Hospital."

Plaintiff described the serious and permanent injuries he sustained; before then he was in good condition, had no physical infirmities. "Hadn't taken a dose of medicine in 40 years and never sent for a doctor in my life for my own self." On cross-examination plaintiff testified, in part: "I cautioned him (Pope) about taking that car around the corner that he was going too fast; far as the reckless part of that is concerned I am not going to put that construction on it particularly. If I swore to that in my complaint, then I will swear to it now. He was driving that automobile in such manner that to any reasonable man the driving of it was reckless. There are places all along that road, filling stations and houses and villages and towns, but I don't think they would appeal to me to get out in the dark 40 miles away from my car, when I was riding with a man that was supposed to carry me back; I don't think you would have gotten out."

L. S. Hadley testified, in part: "I recall after we reached the edge of Hillsboro. Mr. Pope was driving the car; Mr. King was sitting behind him and I was on the front seat. We were driving pretty fast. I glanced at the speedometer a good many times, and it was from 55 to 60, maybe as high as 65 miles an hour. Mr. Pope was talking about

the race his horse won that day and was very enthusiastic about the horse and he turned his head two or three times to look at Mr. King and Mr. King said 'Keep your head to the front, I can hear you,' and I said something to Mr. Pope about driving so fast and gesticulating with his hand. I didn't know we struck the turn until the car began to turn over. When I saw I wasn't broken up I saw Mr. Pope. How he got out of the car I don't know, and finally I found Mr. King and began to shake him and he didn't answer, and finally he groaned, and the first thing he said was 'My legs are paralyzed,' and I straightened him out, and by that time a crowd got there, they raised the car up and pulled Mr. King out the door on the under side and I crawled through the top door and got out that way. Mr. Pope, when I got out, was sitting in somebody else's car just a few feet from where this car turned over. Somebody phoned for an ambulance and all three of us got in it and went to Durham to Watts Hospital. Mr. King was unconscious practically all the way and I thought possibly dead before he got there. . . . I remember him telling him (Pope) that a Chrysler was notorious for being light behind and not taking turns, and Mr. Pope says, 'This car takes turns as good as any car, you watch it at the next turn.' I don't know whether that was the last turn or not. I knew Mr. King well before this time. As well as I know anyone. His condition before this time was as near perfect as any man I know. He had the use of all limbs, muscles and all faculties and was an exceptionally strong, active man. I have seen him work at the mill and he had muscles like a blacksmith. I saw his arm today and there had been considerable shrinkage."

There was evidence by several physicians and nurses as to the nature and extent of the injuries and suffering of the plaintiff.

The defendant offered no evidence. The plaintiff was a guest in defendant's automobile, sitting in the back seat. All the evidence was to the effect that defendant "was sober, in full possession of his faculties, and an experienced driver, was operating his motor vehicle along a road, with which he was thoroughly familiar."

The issues submitted to the jury and their answers thereto, were as follows:

"1. Was the plaintiff injured by the negligence of the defendant as alleged in the complaint? Answer: Yes.

2. Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer? Answer: No.

3. In what amount, if any, is the plaintiff entitled to recover of the defendant? Answer: $8,500."

Judgment for plaintiff was rendered by the court below on the verdict. The defendant excepted to the judgment as signed, made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be considered in the opinion.

*J. Faison Thomson for plaintiff.*
*Ruark & Ruark for defendant.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence, the defendant in the court below made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled the motions and in this we can see no error.

All the evidence was to the effect that defendant had violated certain provisions of the Motor Vehicle Uniform Act, N. C. Code, 1931, Anno. (Michie), 2621(45), in reference to reckless driving; 2621(46) a and b, restrictions as to speed; 2621(51), driving on right side of highway, 2621(54), 2621(55).

The court below read to the jury the sections above of the Motor Vehicle Uniform Act, which were applicable to the facts in this case. The court defined "negligence," "proximate cause" and "contributory negligence," and gave the contentions on this issue as to negligence, and charged the jury: "If you find by the greater weight of the evidence that Mr. Pope was operating the car in violation of the laws enacted by the General Assembly for the safety of people, and that by reason of such violations of the law Mr. King was injured, and that such violation was the proximate cause of his injury, it will be your duty to answer the first issue 'Yes.' If you do not so find, it will be your duty to answer it 'No.' I have defined the term, negligence. The burden of the issue is upon the plaintiff, Mr. King, and if he has satisfied you by the greater weight of the evidence that the defendant, Mr. Pope, was negligent, and that Mr. Pope's negligence was the proximate cause, the real cause of his injuries, it would be your duty to answer the first issue 'Yes.' If you do not so find, or if upon an entire weighing and considering all the evidence you find it equally balanced it would be your duty to answer the issue 'No.' . . . The burden of the issue is upon the plaintiff, Mr. King, and if he has satisfied you by the greater weight of the evidence that the defendant, Mr. Pope, was negligent, and that Mr. Pope's negligence was the proximate cause, the real cause of his injuries, it would be your duty to answer the first issue 'Yes.' If you do not so find, or if upon an entire weighing and considering all the evidence you find it equally balanced it would be your duty to answer the issue 'No.' "

In *Godfrey v. Coach Co.*, 201 N. C., at p. 267, speaking to the subject, we find: "The violation of a statute, intended and designed to prevent injury to persons or property, or the failure to observe a positive safety requirement of the law, is, under a uniform line of decisions, negligence *per se*. *Dickey v. R. R.*, 196 N. C., 726, 147 S. E., 15; *Ledbetter v. English*, 166 N. C., 125, 81 S. E., 1066. And when a violation or failure of this kind is admitted or established, it is ordinarily a question for the jury to determine whether such negligence is the proximate cause of the injury. *Stultz v. Thomas*, 182 N. C., 470, 109 S. E., 361."

The defendant made no exceptions to this part of the charge of the court below. The jury answered this issue that plaintiff was injured by the negligence of the defendant. The battle was over the second issue: "Did the plaintiff by his own negligence contribute to his injury?"

The defendant contends: "The court should have held plaintiff negligent as a matter of law in not demanding and insisting that the defendant stop the automobile and permit him, the plaintiff, to get out of the same." We cannot so hold. Under the facts and circumstances of this case, we think it was a question of fact for the jury to determine.

The court below charged the jury, in part, on this issue as follows: "I further instruct you that the law recognizes that contributory negligence may be due either to acts of omission or acts of commission; in other words, lack of diligence or want of due care on the part of the plaintiff may consist of doing the wrong thing at the time and place in question, or may consist of doing nothing when something should be done. The test is: Did the plaintiff exercise that degree of care which the ordinarily prudent man would exercise under similar circumstances, and was his failure to do so the proximate cause of his injury? Defendant Pope contends that his failure to exercise proper care was the cause of his injury and defendant Pope contends that it was an act of omission on his part; that he failed to do something that he should have done; that by his own testimony he told the jury Mr. Pope was operating the car recklessly, at a high and excessive rate of speed, and that he failed to have him stop the car and get out, and that by this act of omission he was negligent and that you should so find. Plaintiff contends that he remonstrated as best he could and that he was not the owner of the car and that he did the best he could. If the defendant Pope has satisfied you by the greater weight of the evidence that King was negligent, and that his negligence was the proximate cause of the injury it would be your duty to answer the second issue 'Yes,' but if you do not so find, and if upon weighing and considering all the evidence you find it equally balanced, you will answer it 'No.'" We think

the charge of the court below correct, and the question of contributory negligence was for the jury to decide—not the court.

In Huddy Automobile Law, Vol. 5-6, 9th ed. (1931), at p. 265, is the following: "The duty to remonstrate against excessive speed is not, however, absolute, but depends on the circumstances of the particular case, and usually presents a jury question," citing numerous authorities. At p. 267-8: "The circumstances may be such as to charge the occupant with negligence as a matter of law, where he unreasonably remains in the machine after adequate opportunity is offered for alighting, or at least, where he fails to insist on leaving the car. But this duty is not absolute, the question whether a failure to leave the vehicle is a want of ordinary care being dependent on the circumstances of the particular case."

In *Krause v. Hall* (1928), 195 Wisconsin, 565, 217 N. W. Rep., at p. 292, the following observations are made. "No case has been found, however, which attempts to define the amount of protestation necessary to relieve the guest of contributory negligence as a matter of law. When it is considered that the guest has no control over the automobile, and that it is not within his power to coerce the driver, it is apparent that all the guest may do is to indicate to the host his or her displeasure with reference to the manner in which the car is being driven. Under such circumstances, the considerate host will respect the feelings of his guest and modify his rate of speed, or other reckless conduct, to conform to the pleasure of his guest. Should the host persist in his reckless driving, the guest may ask to be let out of the car, but that he should do so under all circumstances has never been held his duty as a matter of law, so far as we are advised. Here the plaintiff did protest, not once, but several times. She did ask to be let out of the car, and it was for the jury to say whether her failure in this respect constituted a want of ordinary care on her part. The jury might well have believed that the ordinary person would have taken chances on remaining in the car rather than be let out on a highway many miles from home on a dark night. It seems fairly plain that in every respect the question of plaintiff's contributory negligence was for the jury, and that their finding with reference thereto cannot be disturbed." *Royer v. Saecker et al.* (1931), ...... Wis., ....., 234 N. W. Rep., 742. *Curran v. Earle C. Anthony, Inc.* (Cal.), 247 Pac. Rep., 236; *Munson v. Rupker* (Ind.), 148 N. E., 169; *Heyde v. Patten* (Mo.), 39 S. W., 813.

In *Nettles v. Rea*, 200 N. C., at p. 45, is the following: "Conceding, without deciding, that plaintiff may have been negligent in entering defendant's car under the circumstances disclosed by the record, nevertheless there is evidence of wilful and wanton conduct on the part of the

defendant in persisting in his reckless driving over the protests of his guests which resulted in plaintiff's injury. This, if nothing else, saves the case from a nonsuit," citing authorities. *Bailey v. R. R.,* 149 N. C., 169; *Ballew v. R. R.,* 186 N. C., 704; *Braxton v. Matthews,* 199 N. C., 484.

" 'But as stated in *Ballew v. R. R., supra,* the intent to inflict the injury may be constructive as well as actual. It is constructive where the wrongdoer's conduct is so reckless or so manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of wilfulness and wantonness equivalent in spirit to actual intent.' " *Braxton's case, supra,* at p. 485.

If the defendant's conduct was wilful and wanton, the plea of contributory negligence could not avail him, and he would not, under such circumstances, be entitled to a nonsuit. In the judgment below we find

No error.