**L. M. HAM, JR., ADMINISTRATOR OF SARAH CATHERINE HAM, v. GREENS-BORO ICE AND FUEL COMPANY.**

(Filed 3 May, 1933.)

**1. Highways B h—**

> The violation of a safety statute is negligence *per se*, but is not actionable unless there is a causal relation between the negligence and the injury in suit, and this causal relation is not presumed from the fact of injury.

**2. Highways B h—**

> The fact that a driver of a truck did not have a license and had parked the truck at an angle instead of parallel to the curb, both in violation of municipal ordinance, does not warrant a recovery for an injury caused by the truck in its subsequent movement, there being no evidence of causal relation between the violation of the ordinances and the injury.

**3. Highways B g—Failure of driver to look under truck before starting it held not negligence under the evidence in this case.**

> Where the evidence tends to show that the deceased, a child two years old, had crawled under defendant's standing truck, and was killed when the truck was backed over her, that the driver of the truck and the person riding with him, upon returning to the truck, looked forward and backward and through the rear window of the truck before starting and backing it, and that they could not have seen under the truck without bending over, their failure to look under the truck before starting it cannot be held for actionable negligence, they having observed the ordinary and reasonable elements of a prudent lookout and inspection.

**4. Highways B h—Evidence of causal relation between injury and act of backing truck in violation of ordinance held insufficient.**

> The evidence tended to show that the deceased, a child two years old, without being observed, crawled under defendant's truck, that the driver, upon his return to the truck, remounted and looked forward and backward before starting and backing it, and that the front wheel of the truck ran over and killed the deceased before the truck had backed its length. The act of backing the truck was in violation of a municipal ordinance. *Held*, the evidence of causal relation between the violation of the ordinance and the injury was insufficient to be submitted to the jury, the question of whether the injury would not have resulted except for the violation of the ordinance being in the realm of bare conjecture, and the testimony of a person riding with the driver that the injury would not have occurred had the truck moved forward does not alter this result, the testimony being a mere expression of opinion by the witness.

CLARKSON, J., dissents.

CIVIL ACTION, before *Harding, J.,* at August Term, 1932, of GUILFORD. It was alleged that the plaintiff is the father and administrator of the estate of the deceased, Sarah Catherine Ham, an infant of about two years of age. On 6 February, 1932, a truck owned by the defendant killed plaintiff's intestate in front of the residence of plaintiff on East Radiance Drive in Greensboro. The defendant was engaged in deliver-

HAM *v.* FUEL CO.

ing ice to the home of the plaintiff and the ice truck was operated by a colored man named Harry Chavis. The father of the driver, to wit, Louis Chavis, was also in the truck. There were no eye witnesses to the fatal accident. A description of the injury as given by Louis Chavis, is as follows: "When we drove up to the curbstone at Mr. Ham's house . . . I gets out of the truck and goes up to the house. I met a colored girl and asked her how much she needed. She said fifty pounds. . . . . I told this boy (Harry Chavis, the driver) to bring me fifty pounds of ice. He brought it and I put it in the ice box, and he turned around as he handed me the ice and goes on back to the truck. I went on back out to the truck myself; saw this pile of little children over on the left playing in the sand. So I told the boy (driver), I says: 'Now, Harry, don't head out toward those little children, you might frighten the children. Back back so as not to frighten the little children.' So then we went back. I looked out on the opposite side of the truck next to Mr. Ham's house myself. He had to look on the other side. I too, looked back through the glass. I saw no one driving up and no one walking up, so we backed back out of the way of these little children. In the meantime I suppose this little child must have been under the back of the truck, I didn't see her, and the left front wheel of the truck ran over the little baby's head. The truck bumped. I says, 'Harry, wait a minute, you have run over some of those little children's toys.' I got out, looked in front of the truck wheel beside of the truck wheel, and saw this little child. I grabbed it and rushed into the house. . . . I goes on up the steps with the little child and met the colored girl. . . . I handed the little girl to her. Mrs. Ham met her on the front porch. I goes on in the house with Mrs. Ham. I saw she was just terribly upset at that time. The little child was falling out of her arms and she was trying to wipe the blood out of its face. I taken the towel from Mrs. Ham and tried to clean the dirt off. A gentleman, I don't know, came up, felt the little child's pulse, and says: 'The baby is gone.' "

The evidence tended to show that opposite the Ham home on East Radiance Drive there was a sand pile on the sidewalk and partially in the street, and that a number of little children were playing in this sand pile at the time the accident occurred. Witness said: "They were playing in the sand pile, playing over to the left on the sand pile a great crowd of them. . . . Sure, if I had took time to get down on my hands and knees I could have seen, looked under the automobile, I did not look under the truck. I looked to the rear of the truck." The driver, Harry Chavis, testified that when he returned to the truck from delivering the ice . . . "I went in front of the truck and looked and did not see no one. I got in the truck, looked out the back glass,

and did not see any one, and started backing the truck. When I backed the truck about the length of the truck, the left wheel jumped over something. I got out immediately and looked, and the child was under the wheel. That was the left front wheel. . . . I saw some children on the opposite side of the street playing in the sand in the sand box. . . . I saw some little tricycles out there. . . . When I looked I did not see any children about my truck. . . . I looked when I was on the ground and my father looked, and I did not see her. . . . I was backing over there to dodge the kids on the other side. They were running all around in the street, some running around and some playing out there. . . . The body of this truck is a big wooden body, about three or four feet from the ground. By looking you could not see all under the truck. . . . Before getting into the truck you would have to bend down to look under it. (Witness illustrates to the jury, bending down about half way), and then you could see under the entire truck."

None of the foregoing evidence was controverted or disputed.

The plaintiff based the right to recover, chiefly upon four elements of negligence, to wit: (a) that the driver of the truck had no license; (b) that he did not park the truck at the curb in accordance with the provisions of the city ordinance; (c) that the truck backed, in violation of a city ordinance, instead of moving forward; (d) that the driver did not keep a proper lookout.

The following issues were submitted to the jury:

1. "Was the plaintiff's intestate, Sarah Catherine Ham, injured and killed by the negligence of the defendant, as alleged in the complaint?"

2. "Did L. M. Ham, Jr., father of Sarah Catherine Ham, by his own negligence, contribute to the injury and death of the said Sarah Cathcrine Ham, as alleged in the answer?"

3. "Did Sarah E. Ham, mother of Sarah Catherine Ham, by her own negligence, contribute to the injury and death of the said Sarah Catherine Ham, as alleged in the answer?"

4. "What damage, if any, is the plaintiff entitled to recover of the defendant?"

The jury answered the first issue "Yes," the second issue "No," the third issue "Yes," and the fourth issue "$2,000."

From judgment upon the verdict the defendant appealed.

*S. J. Stern for plaintiff.*
*Sapp & Sapp for defendant.*

BROGDEN, J. The distressing details to be interpreted are substantially as follows: An ice truck drives up to a home to deliver ice. The street is paved and thirty feet wide. On the opposite side of the street a crowd

HAM v. FUEL CO.

of little children are playing in a sand pile on the sidewalk and in the edge of the street. The deceased, unattended by any older person, is in the group. Apparently, the children have their toys with them. The driver and his father take the ice into the home and return to the truck. Before they get into the truck they look to the front and back and see no children. The truck is so constructed that they could not see under it without bending half way down. They mount the truck, and then look forward and backward, and through the glass in the rear thereof. The father suggests to the driver that it is wiser to back the truck than to move forward for the reason that to move forward the truck would have to be operated through a group of children, but by moving backward away from the children this danger would apparently be avoided. Consequently, they backed the truck, and before the truck had moved the space of its own length, the driver hears a bump. He immediately stops, and upon investigation, finds the little two-year old child under the front of the truck with its head crushed.

Upon the foregoing facts, the first question of law to arise is: Was there sufficient evidence of negligence to be submitted to a jury?

It was admitted that the driver, in violation of an ordinance, was operating the truck without a license. It was admitted that when the truck drove up to the residence it was not parked exactly parallel with the curb but at a slight angle, and thus violating a city ordinance. It was admitted that the truck backed away from the home instead of moving forward, thus violating another city ordinance.

All of the decisions of this State since *Ledbetter v. English,* 166 N. C., 125, 81 S. E., 1066, concur in the view that the violation of an ordinance or of a statute designed for the protection of life and limb, is negligence *per se.* Notwithstanding, the same decisions do not permit recovery for the mere violation of the statute, unless there was a causal relation between the violation and the injury. In other words, mere negligence does not warrant recovery. Recovery must grow out of actionable negligence, and negligence is not actionable until there is evidence of causal relation between the negligent act and the resulting injury. Moreover this causal relation is not presumed from the injury itself. Thus, in *Rountree v. Fountain,* 203 N. C., 381, where a truck backed over a child in an alley, the Court said: "The plaintiff had the burden of establishing the proximate causal relation of the alleged negligence to the injury and death, and in his search for it he is led into the uncertain realm of conjecture." The breach of a statute as an element of negligence was construed in *Austin v. R. R.,* 197 N. C., 319, 148 S. E., 446. The Court said: "There is evidence that the deceased was required to work in breach of this statute. But this requirement did not make the defendant unconditionally liable in damages. The necessary element of liability

is some causal relation between the employee's working over time and the injury he receives." The bare fact that the driver of a truck or automobile was not licensed does not create liability for personal injury. *Peters v. Tea Co.,* 194 N. C., 172, 138 S. E., 595. The failure to park a truck alongside a curbing rather than at a small angle would apparently have no bearing on an injury sustained by the subsequent movement of the truck.

The evidence leaves no doubt as to the fact that the little child crawled under the truck while the driver was delivering ice and was concealed thereunder when the driver returned to resume the operation thereof. The evidence of careful lookout is uncontradicted, and the failure of the driver to bend down and look under the truck cannot be held for actionable negligence when all other ordinary and reasonable elements of prudent lookout and inspection have been observed.

The final inquiry is whether backing the truck, under the circumstances, in violation of the statute was sufficient evidence of proximate cause to be submitted to the jury. The evidence discloses that the front wheel of the backing truck killed the child. If the driver had moved forward, doubtless the rear wheel of the moving truck would have accomplished the same unfortunate result. The father of the driver said: "If we had gone forward, we would not have run over this little child." Manifestly, such statement was a conclusion of the witness and is to be interpreted in the light of all the uncontradicted evidence. What was the position of the child when the truck moved? Did the position change while the truck was in motion? Inferences, theories, and deductions rise and run with the shifting turns of interpretation, but the proof of actionable negligence must rest upon a more solid foundation than bare conjecture. *Grimes v. Coach Co.,* 203 N. C., 605. Therefore, it is the opinion of the Court that the motion for nonsuit should have been allowed.

Reversed.

CLARKSON, J., dissents.