STANCIL ALDRIDGE, A MINOR, BY HIS NEXT FRIEND, W. S. ALDRIDGE, v.
CHARLIE HASTY AND E. S. BURNS.

(Filed 4 June, 1954.)

**1. Bill of Discovery § 1c—**

After the pleadings have been filed, application for examination of the
adverse party can be for no legitimate reason other than to obtain evidence
to be used at the trial, and is available to the applicant as a matter of
right.   G.S. 1-568.11.

**2. Same—**

After the pleadings have been filed, an application for examination of
the adverse parties alleging that the parties to be examined are residents
of a specified county and requesting that the examination be had at the
courthouse of that county, discloses sufficient reason for the designation of
the place for the hearing.   G.S. 1-568.11 (b) (4).

**3. Bill of Discovery § 6—**

Where order for examination of the adverse party after pleadings have
been filed is issued on proper application, and notice of the examination is
served on the adverse party, G.S. 1-568.14, and the adverse party appears
in person and by counsel and participates in the examination, the deposi-
tion is admissible against him, subject to his right to except to the com-
petency, relevancy, or materiality of the testimony.   G.S. 1-568.23; G.S.
1-568.24.

**4. Automobiles § 8a—**

The duty of a motorist to observe traffic regulations is a duty owed not
only to others using the highways, but also to every person on or about the
highways who may suffer injury to his person or damage to his property
as a natural and proximate result of a violation thereof.

**5. Automobiles § 7—**

Where the violation of a safety statute constitutes a criminal offense,
such violation is negligence *per se*, but in order to constitute the basis for
recovery in a civil action such violation must be shown to be the proximate
cause of the injury, including the essential element of foreseeability.

**6. Negligence § 9—**

That the injury be foreseeable is an essential element of proximate cause.

**7. Automobiles § 18b—**

Evidence that defendant in attempting to enter a filling station on the
left side of the highway, drove his vehicle across the highway to his left
directly in the path of a car approaching from the opposite direction at a
time and under circumstances which rendered a collision inevitable, G.S.
20-154, 20-140, and that the driver of the other car swerved to his left,
sideswiping the right of defendant's car, deflecting the course of the other
car so that it went outside the bounds of the highway on its left side and
struck plaintiff, who was standing between two cars parked in a private
driveway, *is held* to warrant the inference that plaintiff's injury could have
been foreseen as the natural and proximate result of defendant's negli-
gence.

12—240

**8. Appeal and Error § 39a—**

Where there is no error relating to the issue of damages and there is no reasonable ground to anticipate that a retrial would result in a verdict more favorable to defendant on the issue of liability, a new trial will not be ordered merely to afford defendant an opportunity to try and induce another jury to reduce the amount of the recovery.

**9. Automobiles §18b—Whether defendant's negligence was proximate cause of injury held for determination of jury upon the evidence in this case.**

The evidence tended to show that while defendant was driving on his right side of the highway a car approached from the opposite direction, turned across the highway in front of defendant's lane of travel when defendant was only 20 to 25 feet away, that defendant swerved his vehicle to the left, hit the right side of the other vehicle in a sideswiping manner, went out of the bounds of the highway, and struck plaintiff who was standing in a private driveway on defendant's left of the highway. There was also evidence that defendant's vehicle was traveling at an excessive and unlawful speed, G.S. 20-141. *Held:* While the speed of defendant's car was not a proximate cause of the collision, since it was insulated by the unforeseeable and unlawful conduct of the operator of the other car, whether such excessive speed was the proximate cause of plaintiff's injury, in that it resulted in defendant's inability to control his vehicle after the collision or stop it before striking plaintiff, is a question for the jury.

**10. Bill of Discovery § 6½ : Evidence § 16—**

Since the amendment of G.S. 1-568.25 (a) and (b) by Chapter 885, Session Laws of 1953, the party introducing the deposition of a witness does not make the party examined his witness and is not bound by adverse statements made by the witness during his examination, and upon motion to nonsuit only so much of the pretrial testimony as tends to establish plaintiff's cause of action or explain other testimony offered in plaintiff's behalf is to be considered.

**11. Trial § 22c—**

Upon motion to nonsuit, the Court must consider all the testimony, but in doing so must draw the conclusion most favorable to plaintiff and leave it for the jury to reconcile any inconsistent, conflicting, or contradictory testimony.

**12. Automobiles §§ 18g (5), 18h (2)—Physical facts at scene held sufficient for jury on question of excessive speed.**

Defendant driver testified that he did not know what happened after the collision between his car and the car of another. He also testified as to the course of his vehicle after the collision. The physical evidence at the scene indicated that after the right fender of his car sideswiped the right side of a car approaching from the opposite direction, defendant's vehicle crossed to the left of the highway, climbed an embankment from 12 to 20 inches high, hurtled into a yard and struck two automobiles, parked in a private driveway, and plaintiff, who was standing between the cars, knocking one of the cars 20 feet and hurling defendant some 59 feet, and then ploughed into a wet field and came to rest some 99 feet from the driveway. *Held:* The facts and circumstances are sufficient to support a finding by the jury that defendant's loss of control of his vehicle and his

inability to stop within a reasonable distance was due to excessive speed and not to his loss of consciousness.

**13. Trial § 32—**

A party who aptly tenders written request for instructions on a point of law arising on the evidence is entitled to have the court give in substance the requested instruction as law coming from the court. Merely giving it as a statement of a contention of the party will not suffice.

APPEAL by both defendants from *Rudisill, J.,* October Term 1953, STANLY.

Civil action to recover compensation for personal injuries sustained by plaintiff when struck by the automobile of defendant Hasty.

About 1:20 p.m. on 23 December 1951, defendants were traveling in opposite directions on Highway 52, about two miles south of Albemarle, in Stanly County. The highway at that point extends in a north-south direction and is straight for several hundred yards in both directions. The Aldridge home is located on a one-acre lot on the west side of the highway with a 300-foot frontage on the highway. There is the usual road ditch and embankment. The height of the embankment in front of the residence was variously estimated to be from twelve to twenty inches. Two automobiles were parked in the Aldridge driveway to the north of the residence. Another was parked on the shoulder of the road. Plaintiff, at the time he was struck, was standing between the two automobiles parked in the driveway. On the east side of the highway there is a filling station about 100 yards south of the Aldridge residence.

Defendant Burns was traveling south on a station wagon, and Hasty was going north on a Chevrolet automobile. As Burns approached the filling station, he turned his vehicle to the left, diagonally across the road, to enter the north driveway of the filling station. He turned directly in front of Hasty's vehicle in the east lane of travel when Hasty's automobile was only 20-25 feet away. Hasty swerved to the left in an attempt to avoid a collision, and the right front fender of his vehicle struck the right side of the Burns station wagon in a glancing or sideswiping manner, went across the road, up into the Aldridge yard, struck plaintiff and the two automobiles in the driveway, and stopped in a wet, plowed field about one hundred feet beyond, mired to the bottom. Burns drove on into the filling station yard. His vehicle was only slightly damaged. He said he did not see the Hasty automobile.

Other pertinent facts are stated and amplified in the opinion.

In the trial below appropriate issues were submitted to and answered by the jury in favor of plaintiff and against both defendants. The court entered judgment on the verdict, and both defendants excepted and appealed.

*Morton & Williams and F. Grainger Pierce for defendant appellant Hasty.*

*R. L. Smith & Son for defendant appellant Burns.*

*Brown & Mauney for plaintiff appellee.*

BARNHILL, C. J.　After the pleadings were filed, the plaintiff sought and obtained leave to examine both defendants prior to trial as provided by General Statutes ch. 1, art. 46. The defendant Burns, at the time the examination was had and in the trial below, moved to suppress the examination of Hasty for the reason that "the application therefor sets out no facts specifying the information sought or the purpose therefor," and "that the Clerk making the order for the examination found no such facts." The motion was overruled, and the plaintiff offered said examination in evidence as against both defendants.

### APPEAL OF BURNS.

This defendant excepted to the denial of his motion to suppress the examination of Hasty and to the admission of the same in evidence as against him. These exceptions are made the bases of exceptive assignments of error and are duly brought forward and discussed in this appellant's brief. They present for decision the only questions of sufficient merit to require discussion.

In 1951 the General Assembly, by the adoption of ch. 760, S.L. 1951, now General Statutes ch. 1, art. 46, repealed our old statute which provided for the examination of adverse parties and substituted in lieu thereof a new statute which in many respects is entirely different in substance and in the procedure provided. Under the terms of the Act a litigant may examine any other party to the action: "(1) For the purpose of obtaining information necessary to prepare a pleading or an amendment to a pleading, or (2) For the purpose of obtaining evidence to be used at the trial, or at any hearing incident to the trial, or (3) For both purposes." G.S. 1-568.3.

We are interested here only in those provisions of the Act which relate to the examination of a party after the pleadings have been filed.

After the "examining party" and "the party to be examined" have both filed their pleadings, "an examination is a matter of right and may be had as provided by G.S. 1-568.11." The examining party must apply to the clerk or judge for an order for the examination and his "application must be in the form of, or supported by, an affidavit showing: (1) That the action has been commenced; (2) That the applicant has filed complaint, petition or answer; (3) That the applicant desires to examine a designated person who has filed a petition, complaint or answer or on whose behalf a petition, complaint or answer has been filed; (4) That the exami-

nation should be held at a place designated in the affidavit, together with facts showing the reasons therefor." G.S. 1-568.11.

"If the judge or clerk finds that the facts are as set out in the affidavit, he shall make an order: (1) Appointing a commissioner to hold the examination; (2) Fixing the time and place of the examination, subject to the provisions of G.S. 1-568.5, and (3) Directing the person to be examined to appear before the commissioner at such time and place for examination." G.S. 1-568.11 (c). G.S. 1-568.5, in so far as it is pertinent here, provides that the time and place of the examination may be changed by agreement of the parties or "for good cause shown," by the order of the clerk.

The application filed by the plaintiff is verified and contains all the information thus required by the statute other than the "facts showing the reasons" for requesting that the examination be held at the courthouse in Stanly County as required by G.S. 1-568.11 (b) (4), that is, it alleges no facts in support of that request other than the allegation that Burns and Hasty are residents of Stanly County.

We are not quite sure we comprehend the underlying purpose of the provision contained in G.S. 1-568.11 (b) (4). If the Legislature intended to require the applicant to state the reasons why he desires the examination or the information he seeks to obtain, it failed to use language which gives expression to that intent. After the pleadings are filed, the examination is available to the applicant as a matter of right. And there could be no legitimate reason therefor—after the parties have pleaded—other than to obtain evidence to be used at the trial. Furthermore, the language relied on is a part of subsection (b) (4). It relates exclusively to, and is a part of the "showing" to be made by the petitioner as required by that particular subsection. The "reasons" to be alleged are the reasons for naming the place for the hearing designated in the petition.

It is alleged in the petition that the parties to be examined are residents of Stanly County. The courthouse is the place provided for judicial hearings. These are, we think, sufficient reasons for requesting that the examination be had at the courthouse of the county of defendants' residence. And, in any event, we hold that, under the circumstances of this case, the failure to state other and additional reasons—if indeed such exist—does not constitute a fatal defect in the application.

Notice of the examination was served on both Burns and Hasty as required by G.S. 1-568.14. Both appeared in person and by counsel and participated in the examination. Hence the deposition was admissible in evidence as against Burns, G.S. 1-568.24, subject to his right to except to the competency, relevancy, or materiality of the testimony as provided by the statute, G.S. 1-568.23, 1-568.24. This right on his part was fully protected by the court below.

Even so, he contends all the evidence tends to show that at the time of the collision he had passed some distance beyond plaintiff who was standing outside the bounds of the highway, and that therefore he owed no duty to plaintiff the breach of which would give rise to liability on his part for the injuries inflicted by the Hasty automobile; and that, even if he violated a traffic regulation, neither the injury suffered by plaintiff nor any such like injury was reasonably foreseeable as a result thereof.

These contentions present squarely for decision three questions: (1) Did this defendant breach any legal duty he owed the plaintiff; (2) where the negligence relied on by plaintiff is the violation of a criminal statute, is foreseeability a condition of liability, and, if so, (3) does the evidence offered warrant and support the inference that defendant, under the facts here disclosed, could and should have foreseen that the injury suffered by plaintiff or some like injury was likely to result?

Our motor traffic regulations are not intended merely to protect those who are using the highways. They are designed to protect the life, limb, and property of any and every person on or about the highway who may suffer injury to his person or damage to his property as a natural and proximate result of the violation thereof. Therefore, this defendant owed to plaintiff and all other persons similarly situated the duty to observe and obey the positive mandates of our motor vehicle traffic regulations.

Strictly speaking, a violation of a criminal statute constitutes a positive, affirmative tort which perhaps should never have been put in the category of negligence. It would seem that this view prevails in some jurisdictions where it is held that foreseeability is not a condition of liability. In these jurisdictions the rule that the tort-feasor is liable for any consequence that may flow from his unlawful act as the natural and probable (or proximate) result thereof, whether he could foresee or anticipate it or not, prevails. It is presumed that he intended whatever resulted from his unlawful act. Cooley on Torts, sec. 50.

In the past this rule has received the sanction of this Court by direct decision as well as by way of *obiter dicta*. *Drum v. Miller,* 135 N.C. 204; *Starnes v. Manufacturing Company,* 147 N.C. 556; *Leathers v. Tobacco Company,* 144 N.C. 330; *McGowan v. Manufacturing Company,* 167 N.C. 192, 82 S.E. 1028; *Hodges v. R. R.,* 179 N.C. 566, 103 S.E. 145; *Watson v. Construction Company,* 197 N.C. 586, 150 S.E. 20.

But the trend of our decisions since the advent of the automobile has been to treat the breach of a criminal law as an act of negligence *per se* unless otherwise provided in the statute. *Godfrey v. Coach Company,* 201 N.C. 264, 159 S.E. 412; *James v. Coach Company,* 207 N.C. 742, 178 S.E. 607; *Whitaker v. Car Company,* 197 N.C. 83, 147 S.E. 729; and *Albritton v. Hill,* 190 N.C. 429, 130 S.E. 5 (exceeding speed limit); *King v. Pope,* 202 N.C. 554, 163 S.E. 447, and *Norfleet v. Hall,* 204 N.C.

573, 169 S.E. 143 (reckless driving and speeding); *Hoke v. Greyhound Corporation,* 226 N.C. 692, 40 S.E. 2d 345, and *Gillis v. Transit Corporation,* 193 N.C. 346, 137 S.E. 153 (failure to keep to the right); *Burke v. Coach Company,* 198 N.C. 8, 150 S.E. 636 (parking on highway); *Holland v. Strader,* 216 N.C. 436, 5 S.E. 2d 311 (failure to give hand signal).

"All of the decisions of this State since *Ledbetter v. English,* 166 N.C. 125, 81 S.E. 1066, concur in the view that the violation of an ordinance or of a statute designed for the protection of life and limb is negligence *per se.* Notwithstanding, the same decisions do not permit recovery for the mere violation of the statute, unless there was a causal relation between the violation and the injury." *Ham v. Fuel Company,* 204 N.C. 614, 169 S.E. 180; *Holland v. Strader, supra.*

"According to the uniform decisions of this Court, the violation of a statute imposing a rule of conduct in the operation of a motor vehicle and enacted in the interest of safety has been held to constitute negligence *per se,* but before the person claiming damages for injuries sustained can be permitted to recover he must show a causal connection between the injury received and the disregard of the statutory mandate . . ." *Conley v. Pearce-Young-Angel Co.,* 224 N.C. 211, 29 S.E. 2d 740.

The conclusion that the violation of a criminal statute designed and intended to protect citizens against injury to their persons or damage to their property constitutes a wrongful act which may be made the basis of an action founded on allegations of negligence is sound. Negligence is the breach of some duty imposed by law. This is the commonly accepted brief and general definition of negligence, and the violation of a motor vehicle traffic regulation is a breach of a duty imposed by law for the protection of individuals and their property.

When the action is for damages resulting from the violation of a motor vehicle regulation, does the doctrine of foreseeability apply? We are constrained to answer in the affirmative.

Whatever the conflict of decision in other jurisdictions on this question may be, it is uniformly held that to entitle a plaintiff to recover in an action bottomed on the violation of a criminal statute it must be made to appear that the injury or damage complained of was the natural and probable result of such violation.

Causal connection between the unlawful act committed and the injury or damage sustained must be shown; that is to say, proximate cause must be established. And we relate foreseeability to proximate cause as an essential element thereof.

"Foreseeable injury is a requisite of proximate cause, and proximate cause is a requisite for actionable negligence, and actionable negligence is a requisite for recovery in an action for personal injury negligently inflicted." *Osborne v. Coal Company,* 207 N.C. 545, 177 S.E. 796, and

cases cited; *Wood v. Telephone Co.,* 228 N.C. 605, 46 S.E. 2d 717; *Shaw v. Barnard,* 229 N.C. 713, 51 S.E. 2d 295.

Consequently, in this as in most jurisdictions, to establish proximate cause foreseeable injury must be made to appear.

We should note, however, for the benefit of Bench and Bar, that when the plaintiff relies on the violation of a motor vehicle traffic regulation as the basis of his action that, unless otherwise provided in the statute, the common law rule of ordinary care does not apply. The statute prescribes the standard, and the standard fixed by the Legislature is absolute. 38 A.J. 831, sec. 160. Proof of the breach of the statute is proof of negligence. In essence, that is the meaning of *per se.*

The violator is liable if injury or damage proximately results, irrespective of how careful or prudent he has been in other respects. No person is at liberty to adopt other methods and precautions which in his opinion are equally or more efficacious to avoid injury. 38 A.J. 831, sec. 160; *Northern Indiana Transit v. Burk,* 89 N.E. 2d 905.

The evidence is such as to compel the conclusion that Burns violated the express provisions of G.S. 20-154 and G.S. 20-140. He drove his vehicle to the left across the lane of traffic of Hasty's approaching automobile at a time and under circumstances which rendered a collision inevitable. He knew, or should have known, that his conduct in so doing would probably deflect the course of Hasty's vehicle and cause it to go outside the bounds of the highway and injure some bystander. That was the natural and proximate result of his unlawful conduct which he could have reasonably foreseen and for which he must answer in damages.

The other exceptive assignments of error are without substantial merit. On this record this defendant has no reasonable cause to cherish the hope that a retrial would result in a verdict more favorable to him on the issue of negligence, and, in the absence of error on the issue of damages, we do not grant a new trial merely to afford the defendant an opportunity to try to induce another jury to reduce the amount of recovery. As to this defendant, the judgment must be affirmed.

### APPEAL OF HASTY.

This brings us to the one decisive question presented by the appeal of defendant Hasty. Did the court below err in denying his motion for judgment as in case of involuntary nonsuit?

That Hasty was not guilty of any actionable negligence which would make him liable to Burns or a passenger on the Burns vehicle, *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808, does not necessarily mean that the evidence exculpates him as to the plaintiff. The relations between Burns and Hasty on the one hand, and Hasty and plaintiff on the other, were quite different.

This defendant was traveling in the eastern or northbound lane of travel which was his right side of the highway. Burns cut his station wagon to the left diagonally across and upon the Hasty lane of travel at a time when Hasty's vehicle was only twenty or twenty-five feet away. The road was straight. It was in the daytime. The scene was in the rural section of the county, and no special hazards existed which required Hasty to reduce his speed below the maximum provided by law. And in the absence of warning, he was not required to anticipate and guard against the negligent conduct of Burns. Under these circumstances, irrespective of his speed, Hasty could not have avoided a collision with the Burns station wagon. Even if he was operating his vehicle at an unlawful rate of speed, as between him and Burns or a passenger on the Burns vehicle, his conduct in so doing may not be deemed a proximate cause of the collision. The conduct of Burns rendered the collision unavoidable, insulated any prior negligence of Hasty, and must be held to be the sole proximate cause of the original collision. On this phase of the case, the line of decisions represented by *Butner v. Spease, supra,* is controlling.

Neither may plaintiff recover judgment against this defendant on the theory his violation of our statute regulating the speed of motor vehicles, G.S. 20-141, was one of the proximate causes of the Burns-Hasty collision.

But plaintiff's cause of action is not made to depend on this one allegation. He asserts that, even if it be held—as we do hold—that the unlawful conduct of Burns insulated any prior negligence on the part of Hasty in respect to, and constituted the sole proximate cause of, the original collision, this defendant was operating his vehicle at such an excessive rate of speed that he was unable thereafter to control his automobile or to stop before striking plaintiff, who was standing outside the bounds of the highway several hundred feet ahead; that the loss of control of his vehicle and his inability to stop within a reasonable distance without leaving the highway was due to his excessive speed and not to his loss of consciousness. In support of these contentions, he relies on the line of cases represented by *Riggs v. Motor Lines,* 233 N.C. 160, 63 S.E. 2d 197.

*Non constat* Hasty's negligence, if any, was not one of the proximate causes of the original collision, has plaintiff offered evidence sufficient in probative force to require the submission of an issue of negligence as against him? On this question we concur in the view of the plaintiff that *Riggs v. Motor Lines, supra,* and like decisions of this Court are controlling, and that this question must be answered in the affirmative.

Hasty testified, in part, that he did not remember a thing after the collision until his car stopped; that he was "stove up"; that he does not remember hitting the bank; and that it was the collision "and the bank and all the rest of the hits" that caused him to be "stove up," and unable

to remember what happened. He repeated these statements in various forms on his pretrial examination.

The original Act, ch. 760, S.L. 1951, provides that any party using the examination of an adverse party thereby makes the party examined his witness, G.S. 1-568.25 (a), and denies him the right to cross-examine such adversary when and if he becomes a witness at the trial, G.S. 1-568.25 (b). This section, however, was amended by ch. 885, S.L. 1953. This latter Act deletes the provision that "the party who introduces the deposition in evidence . . . does make such person his witness" in subsection (a), and revises the language of subsection (b). Under this amendment, the examining party may cross-examine his adversary whose deposition he has used, if and when such adversary becomes a witness in his own behalf at the trial, and may contradict him but "may not impeach his credibility except by the showing of prior inconsistent statements upon proper foundation laid." Ch. 885, S.L. 1953.

So then, under the statute as it now exists, the plaintiff, by introducing his deposition, did not make Hasty his witness and is not bound by the adverse statements made by him during his examination. Instead, we are to consider only so much of the pretrial testimony of Hasty as tends to establish plaintiff's cause of action or to explain other testimony offered in plaintiff's behalf. *Hartley v. Smith,* 239 N.C. 170. We must consider all the testimony, but in so doing we must draw the conclusion most favorable to the plaintiff and leave it for a jury to reconcile the inconsistent, conflicting, or contradictory testimony. *Maddox v. Brown,* 232 N.C. 244, 59 S.E. 2d 791; *Sessoms v. McDonald,* 237 N.C. 720, 75 S.E. 2d 904; *Jackson v. Hodges, Comr. of Insurance,* 232 N.C. 694, 62 S.E. 2d 326; *Emery v. Insurance Co.,* 228 N.C. 532, 46 S.E. 2d 309.

When so considered, does it explain the movements of the Hasty automobile, the damage it did, and the distance it traveled after the collision so as to compel the one conclusion that it was all attributable to Hasty's condition produced by the original collision and not to his speed, or is there other conflicting evidence tending to prove that Hasty was traveling at an excessive rate of speed, and that such unlawful speed was at least one of the proximate causes of the injuries suffered by plaintiff?

For us to accept as determinative and conclusive this defendant's oft-repeated statement that he did not know what happened after his right front fender came in contact with the right front side of the station wagon; and to hold that it explains what happened after he collided with the Burns vehicle and completely exonerates him from any liability to plaintiff would perforce require us to ignore other contradictory statements and disregard the testimony which tends to show that the defendant was traveling at an excessive rate of speed.

This defendant testified that immediately after his right front fender came in contact with the Burns vehicle, he went to his left of the highway, across the western shoulder thereof, up an embankment, into the Aldridge yard; that there was "just a 'lam bamming' " when he hit the automobiles in the driveway, and that he "just came to a easy stop" in the plowed field. These are facts he could not know and about which he could not testify if he was unconscious at the time.

When his car stopped he got out and "hollered for his children"; went to look after his wife who apparently had been hurled from the vehicle when it struck the embankment, and then walked down the road to the filling station and talked to Burns.

After the impact the Hasty vehicle crossed to the left side of the road, traveled some distance down the highway ditch, and climbed the highway embankment. When it climbed or jumped the embankment, it hurdled through the air several feet off the ground from the walkway to the driveway—a distance of forty or fifty feet. There it struck the two parked automobiles, knocking one of them twenty feet and completely around. It also struck plaintiff who was standing at the parked cars and hurled him fifty-nine feet. It knocked off plaintiff's left shoe and cast it forty-six feet beyond plaintiff's body. It then plowed through the wet field until it came to rest ninety-nine feet from the driveway. It stopped only when it had mired so deep it could go no further. ". . . the further the car the deeper the ruts."

Witnesses testified that as he approached and passed through the Aldridge yard, he was traveling very fast and, as some expressed it, "was flying." While no witness undertook to give the distance from the point of the original collision to the point where the Hasty vehicle finally stopped, other testimony as to distances makes it appear that it must have been several hundred feet. The filling station is one hundred yards south of the Aldridge residence, and it is at least 140 feet from the Aldridge walkway to the point where the car stopped.

These facts and circumstances about which the plaintiff offered evidence are sufficient to support a finding that this defendant's loss of control of his vehicle and his inability to stop within a reasonable distance was due to excessive speed and not to a loss of consciousness. At least the jury may so find—and that is the question we are required to decide.

*Non constat* Hasty could not reasonably foresee, and was not required to anticipate, the wrongful and unlawful conduct of Burns, if he was at the time operating his automobile at an unlawful speed and such unlawful speed was the reason, or one of the reasons, why he could not stop within a reasonable distance and without traveling outside the bounds of the highway, crashing into the two automobiles, and striking plaintiff, then and in that event his unlawful speed constitutes at least one of the proxi-

mate causes of the injuries suffered by plaintiff. If the jury should so find, then the conduct of Burns did not break the line of causation as to plaintiff but merely accelerated the result of his (Hasty's) negligence. As between Hasty and plaintiff, the conduct of Burns was only a contributing or concurring cause. *Riggs v. Motor Lines, supra; Banks v. Shepard,* 230 N.C. 86, 52 S.E. 2d 215.

This subject is fully discussed in *Riggs v. Motor Lines, supra.* Further discussion at this time would serve no useful purpose. Suffice it to say that the line of cases represented by that decision is controlling here.

The physical facts at the scene of a collision may disclose that the operator of a vehicle involved in the accident was traveling at an excessive speed. *Riggs v. Motor Lines, supra.* We conclude, therefore, that the evidence of the physical facts and other testimony offered by plaintiff is sufficient to repel this defendant's motion for judgment of nonsuit. It is for a jury to say whether defendant's inability to stop before colliding with plaintiff was due to his alleged loss of consciousness or to his alleged excessive speed, or to the conduct of Burns and notwithstanding the fact he (Hasty) was traveling at a lawful speed.

This appellant in apt time prayed the court to charge the jury that he was under no duty of anticipating the negligent and unlawful conduct of Burns and that, instead, he had a right to assume and to act upon the assumption that Burns would exercise ordinary care for his own safety and the safety of others on the highway. The prayers for instruction are in amplified form. As the principle of law incorporated therein and not the exact wording thereof determines the materiality and propriety of the proposed instruction, we need not quote it verbatim. Reference to the principle of law he sought to have applied to the facts in the case is sufficient.

· The court gave the substance of the prayers for instructions but it did so in the form of a contention made by this appellant. This will not suffice. He was entitled to the instructions coming from the judge as the law in the case, applicable to the facts relating to the circumstances of the original collision. As it will be somewhat difficult for a layman, in any event, to distinguish between the effect of the negligence, if any, of Hasty as it relates to the original impact on the one hand, and to the injuries suffered by the plaintiff on the other, we deem the failure of the court to instruct the jury fully on this principle of law as requested sufficiently prejudicial to entitle this defendant to a new trial.

As to defendant Burns—No error.

As to defendant Hasty—New trial.