F. W. LAWRENCE, JR., AND LUMBERMEN'S MUTUAL CASUALTY COMPANY v. SOLOMON C. BETHEA.

(Filed 7 March, 1956.)

**1. Automobiles §§ 41b, 43—Evidence of excessive speed held for jury on question of proximate cause.**

There was some evidence that defendant was traveling 45 miles per hour in a 35-mile per hour speed zone, that a truck, traveling in the same direction at excessive speed, sideswiped defendant's car on its left in attempting to overtake and pass it, causing defendant to lose control of his automobile, so that it ran off the highway and struck plaintiff's cars which were parked in a private drive. *Held:* Whether defendant was guilty of negligence and, if so, whether his negligence was a proximate cause of the damage or was insulated by the intervening negligence of the truck driver, are questions for the jury, and nonsuit is erroneous.

**2. Trial § 22c—**

Discrepancies and contradictions in the plaintiff's evidence are for the jury and not for the court.

APPEAL by plaintiffs from *Grady, Emergency Judge,* at October Term, 1955, of PASQUOTANK.

*McMullan & Aydlett and Gerald F. White for plaintiffs, appellants.*

*LeRoy & Goodwin for defendant, appellee.*

JOHNSON, J.   Civil action in tort by plaintiffs to recover for collision-damage to automobiles, allegedly caused by the negligence of the defendant.

At the close of the plaintiffs' evidence the trial court allowed the defendant's motion for judgment as of nonsuit.   The single question presented for decision is whether this ruling was correct.

Highway No. 158 runs north and south along the beach from Nags Head through the town of Kill Devil Hills, in Dare County.   The paved portion of the highway is 20 feet wide, with soft sand shoulders on each side.   Cottages are located between the highway and the beach.   The collision occurred a few minutes after midnight, 24 July, 1955, near the juncture of the driveway leading from the highway to a private cottage on the beach where the plaintiff Lawrence and family were staying.

Earlier that night, the plaintiff Lawrence had parked his 1953 Dodge and his 1951 Plymouth automobiles side by side on the concrete driveway between the cottage and the highway.   Both cars were headed toward the highway, and the nearest one was about 21 feet from the highway.   The plaintiff Lawrence was "awakened by an unusually loud crash."   He looked out the window and "saw a cloud of dust," and upon investigation found that his automobiles had been struck by a Chevrolet car driven by the defendant.   The Chevrolet was jammed in between "the two parked cars."

Other evidence on which the plaintiffs rely tends to show that heavy tire marks were traced behind the defendant's Chevrolet from the point of impact in the driveway back through the sand alongside the highway, "over various other driveways," a distance of more than 180 feet southwardly, to the point where the Chevrolet left the highway.

Other evidence discloses that immediately before the collision, the defendant was driving his Chevrolet northwardly along the highway; that a pick-up truck belonging to Twiford's Funeral Home approached from the rear, overtook, and passed the defendant, and in doing so struck "a slight portion of the left rear bumper" of the Chevrolet and sideswiped its left rear fender and left side.   Whereupon the defendant's Chevrolet left the surfaced portion of the highway and veered off into the sand on its right immediately beyond the point of impact, where debris was found on the highway, and from there "made a diagonal course . . . through the sand . . . passing over intervening driveways until it came to a halt against the two cars of Mr. Lawrence," an over-all distance of 189 feet.

"The weather . . . was dry, clear, and not raining. . . . in fact had been dry for some time.   The sand was soft. . . . Sand in the condition in which it was in . . . the early morning of July 24th is not easily traversed by automobile."

It was stipulated that the collision occurred in a 35-mile per hour speed zone.

The "Lawrence cars received considerable damage as a result of the impact." The Dodge was pushed through some posts and through a 6-foot section of sand. The Plymouth was demolished to the extent it was reduced to salvage value. The plaintiff Lawrence was paid $1,225 for its loss by the plaintiff insurance company. The damage to the Dodge, according to the testimony of one witness, reduced its value $950. The insurance company paid Lawrence $651.58 under its collision policy on the Dodge. Plaintiff Lawrence had a $50 deductible policy on each car. In the trunk of the Dodge were an Exide battery, a propeller for an electric trolling motor, and a new can full of gasoline. All these items were smashed and rendered worthless.

Other phases of the evidence (parts of which are more favorable to the defendant than to the plaintiffs) tend to show that before the defendant's Chevrolet ran off the highway it was struck from the rear and side "a terrific blow" by the Funeral Home pick-up truck as the latter overtook and passed the Chevrolet; that the pick-up struck the Chevrolet "on the rear left bumper and the left rear fender on down the side"; that the pick-up, after striking the defendant's car, traveled a distance of 423 feet—part of which was through soft sand on the left shoulder—struck and tore down a telephone pole, turned over and killed its driver. Over the defendant's objection, Patrolman Meiggs gave as his opinion, based on his experience in working on Highway 158 along the Dare beach and his knowledge of the condition of the sand at and near the place of collision, that the defendant's car was traveling about 45 miles per hour when it left the highway and as much as 35 miles per hour at "the point of impact of the two cars that were parked." CROSS-EXAMINATION: "I asked Bethea how fast he was going and he said 35 miles and I put it in my report. The way my report reads is: 'Estimated speed at moment of accident 35 miles.' . . . It is possible from the evidence I saw and the experience that I have had that the impact from the truck would have increased the speed of the Bethea car as much as 10 miles an hour."

Our analysis and appraisal of the evidence leaves the impression it is sufficient to carry the case to the jury on the issue of actionable negligence. The evidence, when viewed in its light most favorable to the plaintiffs, as is the rule on motion for nonsuit, is susceptible of the inference that the defendant's negligence, based on excessive speed in a 35-mile per hour speed zone, was one of the proximate causes of the collision. It may be conceded that certain phases of the evidence are susceptible of counter inferences (1) that the defendant was free of negligence, or (2) that any negligence attributable to him was insulated

or superseded by the intervening negligence of the driver of the Funeral Home truck. But on this record, whether either of these permissive inferences shall be drawn is a matter to be determined by the jury in resolving the crucial questions of negligence and of proximate cause. Discrepancies and contradictions in the plaintiff's evidence are for the jury and not for the court. *Childress v. Lawrence*, 220 N.C. 195, 16 S.E. 2d 442; *Brafford v. Cook*, 232 N.C. 699, 62 S.E. 2d 327. Decision here is controlled by the principles explained and applied in *Riggs v. Motor Lines*, 233 N.C. 160, 63 S.E. 2d 197, and *Aldridge v. Hasty*, 240 N.C. 353, 82 S.E. 2d 331.

For the reasons stated, the judgment below is
Reversed.