VERNON LEE HUTCHENS, INFANT, BY HIS NEXT FRIEND, FOY HUTCHENS, v. DELORES RAYE BOYD SOUTHARD

AND

FOY HUTCHENS v. DELORES RAYE BOYD SOUTHARD.

(Filed 12 April, 1961.)

**1. Negligence § 16—**

A child between the ages of 7 and 14 is presumed incapable of contributory negligence, and therefore nonsuit on the ground of contributory negligence of such minor cannot be entered.

**2. Automobiles § 25—**

Even though speed is within the statutory maximum, a motorist is required to reduce speed when approaching an intersection when necessary to comply with the legal duty to exercise due care to avoid injury to persons or property, and failure to do so amounts to negligence *per se*. G.S. 20-141(c).

**3. Automobiles § 7—**

A motorist is under duty to keep a continuous lookout in the direction of travel and will be held to the duty of seeing what he ought to see.

**4. Trial § 22—**

On motion to nonsuit, the evidence is to be taken in the light most favorable to plaintiff, giving plaintiff the benefit of every reasonable intendment upon the evidence and every legitimate inference to be drawn therefrom.

**5. Automobiles § 32—Evidence of defendant's negligence in striking bicyclist at intersection held sufficient to be submitted to jury.**

   Plaintiffs' evidence tending to show that defendant was travelling west about fifty miles per hour along a paved road on a clear day and drove into an intersection with a dirt road without decreasing speed, that the intersection was marked by appropriate sign along the paved road, that there was a dip in the highway and a hill to the east of the intersection obscuring the road to the east, and that plaintiff minor could have been seen either stopped at the edge of the pavement or entering the intersection from the dirt road on his bicycle, *is held* sufficient to be submitted to the jury on the issue of defendant's negligence in violating G.S. 20-141(c) under circumstances from which consequences of a generally injurious nature might have been anticipated, and also that such speed made it impossible for defendant to have avoided the accident after defendant saw the bicyclist or should have seen him in the exercise of reasonable care.

WINBORNE, C.J., DENNY and RODMAN, J.J., concur in result.

APPEAL by plaintiffs from *Johnston, J.,* 14 November 1960 Term of YADKIN.

These are two cases which by consent of counsel were consolidated for trial.

The first case is a civil action by Vernon Lee Hutchens, an infant appearing by his next friend, his father Foy Hutchens, to recover damages for severe personal injuries.

The second case is a civil action by the infant's father, Foy Hutchens, to recover a substantial sum for medical, doctors, and hospital expenses incurred by the treatment of his unemancipated thirteen-year-old son for severe personal injuries for which he, the father, is responsible.

From judgments of involuntary nonsuit in both cases entered at the close of plaintiffs' evidence, each plaintiff appeals.

*H. Smith Williams and R. Lewis Alexander for plaintiffs, appellants.*
*Hudson, Ferrell, Petree, Stockton & Stockton. By: R. M. Stockton, Jr., and Norwood Robinson for defendant, appellee.*

PARKER, J.   Vernon Lee Hutchens was thirteen years old, when he was injured on 18 April 1958. This is stated in defendant's brief: "It is conceded by the defendant that under the law of the State of North Carolina a defendant cannot obtain a nonsuit on the grounds of contributory negligence where the minor plaintiff is 13 years of age. The presiding Judge advised counsel that he was not granting the nonsuit because of contributory negligence but because of in-

sufficient evidence of negligence on the part of the defendant."

Plaintiffs' evidence tends to show the following facts:

North Carolina Highway No. 67 about two miles west of the town of East Bend has pavement twenty feet and two inches in width, runs east and west, and there it is intersected at right angles on each side by a dirt road about eighteen feet wide running north and south. There is a center line on the pavement of the highway. There are Stop Signs beside the dirt road at the northwest and southeast corners of the intersection. At the northeast corner of the intersection there is a bank approximately twenty to twenty-five feet high some twelve feet from the northern edge of the paved portion of the highway. This intersection is "in the open countryside."

About 4:10 o'clock p.m. on 18 April 1958 Vernon Lee Hutchens riding his cousin's bicycle on the dirt road travelling south approached its intersection with Highway No. 67. Visibility was good: it was "clear as a bell and the pavement was dry."

This is a summary of Vernon Lee Hutchens' testimony: He was coming downhill on the dirt road sliding. There was a big, high bank on his left. He knew a Stop Sign was there. He stopped back from the pavement of Highway No. 67 about a foot. After he stopped — and he does not know how long he stopped —, he looked east and west on Highway No. 67 and across the highway. Seeing no automobile approaching, he started across the highway. He knows nothing more. He regained consciousness in a hospital. How long later, he does not know.

B. F. Holler, a State highway patrolman, arrived at the scene about 4:30 o'clock p.m. the same afternoon. When he arrived at the scene, he saw a cloth top Chevrolet Convertible two-door automobile. This automobile was about 93 feet west of the intersection. It was crossways on the highway with its front end pointing back a slight degree toward the intersection. Its front end was near the south edge of the pavement. Its hood was buckled in front, its windshield was broken out in the middle, its right headlight was out, its bumper and grill were pushed backwards. On the front of its hood and on the hood emblem there was blood and bits of flesh. On the pavement underneath the front part of the automobile there was a pool of blood, bits of bone, and parts of flesh. A badly broken up bicycle was lying under the front of the automobile. Patrolman Holler testified: "There were 93 feet of uninterrupted and continuous skid marks on the highway, headed west from the intersection. The marks veered off to the left of the road and led up to the Chevrolet. There were three black marks there. Toward Winston-Salem, east of the beginning of the three

marks, there was one black mark 17 feet long in the west bound lane near the center line which led to dug-out places in the pavement at the beginning of the other marks. I found no debris or anything else at the end of the 17-foot mark and the beginning of the other, except I found the dug-out places in the pavement." He found broken marks on the dirt road about two inches wide about the same width as the tires on the boy's bicycle, and roughly one or two feet in length that lead up to the pavement of the highway approaching from the north. He doesn't remember whether these marks touched the pavement or not. The spaces between the marks were about one or two feet wide, and their total length was nineteen feet and five inches. These marks went directly into the point on the highway where he found a gouged out place. Then he found a tire mark on the highway that was seventeen feet long and that went into the same point. Defendant was driving the Chevrolet automobile on Highway No. 67, travelling west from the town of East Bend and approaching this intersection. She told patrolman Holler that immediately before the collision of the automobile with the bicycle on which Vernon Lee Hutchens was riding, she was going about fifty miles an hour. She said the boy came out of the dirt road standing up on a bicycle right in front of her. Defendant admits in her answer in both cases that she and three adults were sitting in the front seat of the automobile at the time of the collision.

Patrolman Holler testified: "There is a dip in Highway No. 67 as you look toward East Bend from this intersection. From the point where I found the beginning of the three marks, or at the intersection where the scrape was, it is approximately three hundred feet to that dip in the highway. Some of a vehicle in this dip is visible from that point in the intersection where the scrapes were. Sitting in my car you could possibly see from the windshield up on the average car. There is a hill on the east side of this intersection, between the intersection and East Bend, a short distance approximately six hundred feet from this intersection. It is a pretty good hill. You could not see a car over it."

Vernon Lee Hutchens was severely injured in the collision, sustaining, among other injuries, a compound comminuted fracture of his left leg, a fracture of the pelvic bone, and a fracture of his skull.

Foy Hutchens, father of Vernon Lee Hutchens, has received for treatment of his son's injuries sustained in the collision doctors, hospital and ambulance bills in a very substantial amount.

Vernon Lee Hutchens was in the fifth grade in school in 1956-57

and 1957-58. He did not pass, and his grades were failing. He was classified by his teacher as slow.

In this State a *prima facie* presumption exists that an infant between the ages of seven and fourteen is incapable of contributory negligence, but this presumption may be overcome. *Adams v. Board of Education*, 248 N.C. 506, 103 S.E. 2d 854; *Caudle v. R.R.*, 202 N.C. 404, 163 S.E. 122. See *Walston v. Greene*, 247 N.C. 693, 102 S.E. 2d 124. This presumption comes to the aid of Vernon Lee Hutchens, as defendant concedes in her brief. *Boykin v. R.R.*, 211 N.C. 113, 189 S.E. 177.

There is no evidence to show that defendant in the open countryside was driving the Chevrolet automobile at a speed greater than the maximum speed limit of 55 miles an hour. *Shue v. Scheidt, Comr. of Motor Vehicles*, 252 N.C. 561, 114 S.E. 2d 237. However, the fact that the speed of her automobile was 50 miles an hour, as she testified, did not relieve her "from the duty to decrease speed when approaching and crossing an intersection, . . . , and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway, and to avoid causing injury to any person or property either on or off the highway, in compliance with legal requirements and the duty of all persons to use due care." G.S. 20-141(c). This statutory regulation of speed at intersections has for its purpose the protection of those who are in, entering, or about to enter, the intersecting highway. *Etheridge v. Etheridge*, 222 N.C. 616, 24 S.E. 2d 477. G.S. 20-141(c) prescribes the standard of care at intersections, "and the standard fixed by the Legislature is absolute." *Aldridge v. Hasty*, 240 N.C. 353, 82 S.E. 2d 331. Proof of the breach of G.S. 20-141(c) is negligence. In essence, that is the meaning of *per se. Aldridge v. Hasty, supra; Conley v. Pearce — Young — Angel Co.*, 224 N.C. 211, 29 S.E. 2d 740.

"It is the duty of the driver of a motor vehicle not merely to *look* but to *keep an outlook* in the direction of travel: and he is held to the duty of seeing what he ought to have seen." *Wall v. Bain*, 222 N.C. 375, 23 S.E. 2d 330.

On 18 April 1958 on Highway No. 67 as defendant approached the intersection from the town of East Bend travelling west, there was a highway caution sign about two hundred feet east of the intersection indicating to her an intersection ahead in the direction of her travel.

Accepting plaintiffs' evidence as true, and considering it in the light most favorable to them, and giving them the benefit of every reasonable intendment upon the evidence and every legitimate inference to be drawn therefrom, as we are required to do in passing on the

motions for judgments of involuntary nonsuit, *Smith v. Rawlins,* 253 N.C. 67, 116 S.E. 2d 184, it would permit the jury to find as follows:

Plaintiff, a thirteen-year-old boy, approaching the intersection of the dirt road on which he was riding a bicycle with Highway No. 67 about 4:10 p.m. on a clear day with visibility good stopped his bicycle about a foot from the pavement of Highway No. 67, the high bank to his left was twelve feet from the pavement, looked east and west on Highway No. 67 and across Highway No. 67, saw no approaching automobiles, and then started across the intersection. That defendant was approaching this intersection from the east driving a Chevrolet automobile along Highway No. 67 travelling west, that as defendant approached this intersection about two hundred feet from the intersection on the highway there was a caution sign indicating an intersection ahead of her, which she saw or could have seen, if she was discharging her duty of keeping an outlook in her direction of travel. That there is a dip in Highway No. 67 as you look toward East Bend from the intersection about three hundred feet from the intersection, and that sitting in an automobile one could *possibly* see from the windshield up on the average automobile. That east of the intersection, was a pretty good hill, and you could not see an automobile over it. That in spite of the highway caution sign indicating an intersection ahead and the dip in the highway three hundred feet from the intersection and the pretty good hill six hundred feet from the intersection, defendant approached and drove her automobile into the intersection without decreasing speed at a speed of about fifty miles an hour, when if she had been keeping a proper lookout she could have seen as she approached the intersection Vernon Lee Hutchens stopped at the edge of the pavement or entering the intersection. That defendant was guilty of negligence *per se* in operating the Chevrolet automobile in violation of G.S. 20-141(c), and that she in the exercise of reasonable care might have foreseen from such negligence consequences of a generally injurious nature might be expected to follow, as it did, and that such negligence on her part was the proximate cause of her driving the Chevrolet automobile into Vernon Lee Hutchens and his bicycle inflicting upon him grievous personal injuries. The evidence would also permit the jury to find that defendant's negligence in driving the automobile into the intersection at a speed of about fifty miles an hour made it impossible for her to avoid the collision of the automobile with Vernon Lee Hutchens and the bicycle, after seeing the child, or when by the exercise of reasonable care she could have seen the child in time to avoid injuring him.

Plaintiffs' evidence presents a case for the jury. Though the facts are not similar, our position here finds support in the decisions in *Carter v. Shelton*, 253 N.C. 558, 117 S.E. 2d 391; *Hollingsworth v. Burns*, 210 N.C. 40, 185 S.E. 476.

The judgments of involuntary nonsuit entered below are

Reversed.

Winborne, C.J., Denny & Rodman, J.J., concur in result.