CLAUDE L. RHYNE AND BETTIE TOLSON RHYNE v. PAUL L. BAILEY, PAUL L. BAILEY, JR., AND ALVIN E. WOODS.

(Filed 19 April, 1961.)

**1. Statutes § 2:    Constitutional Law § 24:    Jury § 5—**

The statutory provisions for the trial of actions for small claims in the Superior Court without a jury, unless jury trial is demanded pursuant to the procedure therein provided, is not a special act relating to the establishment of courts inferior to the Superior Court, and is valid. Constitution of North Carolina, Art. 2 § 29.

**2. Trial § 22—**

On a motion to nonsuit, the evidence is to be considered in the light most favorable to plaintiff, giving him the benefit of every reasonable intendment and inference to be drawn therefrom.

**3. Same—**

Discrepancies and contradictions, even in plaintiffs' evidence, are to be resolved by the jury, and do not justify nonsuit.

**4. Automobiles § 7—**

A motorist is under duty to keep a continuing lookout in the direction of travel and is held to the duty of seeing what he ought to see.

**5. Pleadings § 12—**

Upon demurrer, a pleading is to be liberally construed with a view of substantial justice between the parties, G.S. 1-151.

**6. Automobiles § 35:    Pleadings § 28—**

Allegations in regard to careless and reckless driving will not be held fatally defective in citing G.S. 20-140, even though the evidence discloses that the accident occurred within a campus of a university within the purview of G.S. 20-140.1, since a pleading will be liberally construed with a view to substantial justice between the parties.

**7. Automobiles § 17—**

Where two vehicles approach an intersection at which no stop sign

has been erected on either street, the vehicle on the right has the right-of-way when the vehicles approach the intersection at approximately the same time, while if one vehicle is already within the intersection when the other vehicle approaches, the vehicle first in the intersection has the right-of-way. G.S. 20-155 (a) (b). This rule does not apply to a vehicle making a turn in the intersection.

**8. Automobiles § 41g—**

Plaintiffs' evidence in this case is held sufficient to raise an issue of fact as to the negligence of the driver of each of the vehicles colliding at an intersection in failing to operate their respective vehicles with due caution and circumspection and in failing to maintain a proper lookout, and as to one driver failing to yield the right-of-way at the intersection to the vehicle on his right, and that, as a proximate result of the collision, one of the vehicles was knocked or pushed against plaintiffs' parked car causing the damage in suit.

**9. Automobiles § 55—**

If a son negligently operates an automobile owned and maintained by the father for the pleasure and convenience of the family, the father may be held liable for the resulting damage under the family purpose doctrine which obtains in North Carolina.

APPEAL by plaintiffs from *Williams, J.,* December 1960 Assigned Term of WAKE.

Civil action to recover compensation in the amount of $350.00 for damages to plaintiffs' automobile.

The case was heard by Judge Williams sitting without a jury, — no jury trial having been demanded by any party —, by virtue of Chapter 477, 1953 Session Laws of North Carolina, relating to the procedure in the adjudication of small claims in the Superior Court for Wake County.

From a judgment of nonsuit as to both defendants entered at the close of plaintiffs' evidence, plaintiffs appeal.

*Lassiter, Leager & Walker By: Myron C. Banks for plaintiffs, appellants.*

*Joyner, Howison & Mitchell By: Walton K. Joyner for Alvin E. Woods, defendant, appellee.*

*Dupree, Weaver, Horton & Cockman By: G. Earl Weaver for Paul L. Bailey and Paul L. Bailey, Jr., defendants, appellees.*

PARKER, J. About 5:15 o'clock p.m. on 14 December 1959 plaintiffs' Ford automobile, parked on the south side of Univeristy Drive on the campus of North Carolina State College, sustained damage in the amount of $321.49 (this was stipulated by the parties), as a result of

being struck in its left rear by a Ford automobile driven by Paul L. Bailey, Jr., son of Paul L. Bailey. Paul L. Bailey owned the automobile driven by his son, and purchased and maintained it for the use, pleasure and convenience of his family. Immediately prior to this collision there had occurred a collision in the intersection of University Drive and an unnamed street between an automobile driven by Paul L. Bailey, Jr., and a Pontiac automobile driven by Alvin E. Woods. University Drive runs east-west. The unnamed street enters University Drive on an upgrade from the north from a parking lot, but does not cross University Drive. The unnamed street was about as wide as the main travelled portion of University Drive, and was paved. There were no road signs or traffic signal at or near the intersection. At and near the intersection there were no obstructions to interfere with the view of traffic. Both streets carried heavy traffic.

Paul L. Bailey, Jr. was called as a witness by plaintiffs, and testified on direct examination in substance: He was driving the automobile east on University Drive about 25 miles an hour. When he was 15 to 20 yards from the intersection, he saw the Woods automobile standing still on the unnamed street to his left and north 10 or 15 feet back from its intersection with University Drive. Paul L. Bailey, Jr. drove into the intersection at a speed of about 20 miles an hour and after he had entered the intersection Woods put his automobile in motion, and drove it into the intersection between 5 and 10 miles an hour. He sounded his horn, applied his brakes, and attempted to turn his automobile slightly to his right in an attempt to get between the front end of the Woods automobile and a row of parked automobiles on his right. The Woods automobile ran into the left side of his automobile, and shoved his automobile into the rear of plaintiffs' automobile. The weather was fair. The sun set at 5:02 o'clock p.m., but he had no lights turned on, because it was not dark enough to require lights.

Paul L. Bailey, Jr. testified in substance on cross-examination by counsel for defendants Bailey: He could see down University Drive about 500 feet or more. As he approached the intersection, Woods did nothing to indicate that he would start forward into the intersection. As he got near the intersection, he saw Woods coming into the intersection. He turned to his right, applied his brakes, and blew his horn. His automobile was hit in the left side by the Woods automobile, and the impact of the collision forced him into the left rear of plaintiffs' automobile. Woods was attempting to make a left turn to go east. After the collision Woods told him he didn't see him. Woods told a policeman investigating the collision he did not see him until

after the impact. There was nothing wrong with his brakes. University Drive is a two-lane street. When his automobile was struck by Woods' automobile, it was more than half way past the center of the unnamed street.

Paul L. Bailey, Jr. testified in substance on cross-examination by Woods' counsel: The speed limit on the campus was 20 miles an hour. He sounded his horn after he entered the intersection. He had gone over half way into the intersection before the moment of impact, that is 15 to 20 feet into the intersection, if the unnamed street is of the same width as University Drive. Both automobiles had travelled approximately the same distance. He was travelling 25 miles an hour. He was travelling two and a half times as fast as the Woods automobile, if Woods was going 10 miles an hour. He hit his brakes and skidded about 10 feet. As he entered the intersection, he noticed that Woods was entering the intersection too.

Alvin E. Woods testified in substance on direct examination: He came to a complete stop at the intersection of the unnamed street and University Drive. He had his lights on, because he thought it was dark enough to require them. He observed both east and west up and down University Drive, and then proceeded to make a left turn onto University Drive, at which time he was struck by the Bailey automobile. His speed at the moment of collision was about 5 to 7 miles an hour. He has no opinion as to the speed of the Bailey automobile. He saw the Bailey automobile just at the impact point. He immediately slammed on his brakes. He did nothing to indicate he was entering the intersection other than having his lights on. It was a clear day, but it was dusk dark with very poor vision. After his automobile and the Bailey automobile collided, the Bailey automobile went over to the right and struck plaintiffs' automobile. There is no obstruction of view at the intersection. There was no obstruction to interfere with the view of traffic to the east for 300 or 400 feet at the intersection. The damage to the Bailey automobile was to the front left fender, and bumper, and the chrome strip on the side. His automobile was damaged on the extreme right front fender, the extreme front portion of the headlight, and corner of the bumper. The only thing he heard was the brakes of the Bailey automobile a split second just prior to the collision. The point of collision was about 3 to 4 feet over the center line of University Drive, the south side of the center line. His automobile was approximately over the center line of the intersection where the center line of the unnamed street intersects with the center line of University Drive. University Drive is about 30 feet from curb to curb.

Woods testified in substance on cross-examination by counsel for the Baileys: When he stopped before entering the intersection, the front of his automobile was 4 or 5 feet back from University Drive. He was aware of the fact that both University Drive and the unnamed street are heavily travelled He did not see the Bailey automobile at any time prior to the collision. The impact did not occur immediately after he drove into the intersection. He had moved across the north lane of University Drive and was on the south side of the center line of University Drive.

Woods testified in substance on cross-examination by his own counsel: There was no automobile in the intersection, when he entered it. After the collision he saw a single track skidmark extending 15 feet from the right rear wheel of the Bailey automobile behind the intersection on University Drive.

W. A. Lamm investigated the collision, and testified in substance: The point of impact was 18 feet from the west curb of the unnamed street, 21 feet south of the north curb of University Drive. Bailey said, "he was going about 25 miles an hour at the time that he first noticed the danger of collision 20 yards from the intersection and then was going about 20 miles an hour at the time they hit." Woods said, "he was going about 10 miles an hour, and did not see the other car until they hit."

In the joint answer of defendants Bailey and in the answer of defendant Woods there is no plea of contributory negligence nor of a counterclaim.

Chapter 477, § 4, 1953 Session Laws of North Carolina, relating to the procedure in the adjudication of small claims in the Superior Court for Wake County, reads: "No jury trial shall be had in such small claims actions, unless a party thereto shall demand a jury trial in the first pleading filed by him. Such small claims actions shall be tried before the judge presiding over the Superior Court of Wake County . . . ." In the instant case there was no demand for a jury trial by any party.

In respect to a somewhat similar statute for Forsyth County this Court said in *Furniture Co. v. Baron,* 243 N.C. 502, 91 S.E. 2d 236: "An examination of the foregoing Act reveals that its purpose is procedural in character and does not purport to relate to the establishment of a court inferior to the Superior Court within the purview of Article II, § 29, of the Constitution of North Carolina." See 35 N.C. Law Review 203.

The question presented is the sufficiency of plaintiffs' evidence to

withstand the motions of defendants for a judgment of compulsory nonsuit.

In considering such a motion, we are required to accept plaintiffs' evidence as true, and to consider it in the light most favorable to them, and to give them the benefit of every reasonable and legitimate inference to be drawn therefrom. *Hutchens v. Southard,* 254 N.C. 428, 119 S.E. 2d 205; *Smith v. Rawlins,* 253 N.C. 67, 116 S.E. 2d 184.

"Discrepancies and contradictions, even in plaintiff's evidence, are for the twelve and not for the court," *Brafford v. Cook,* 232 N.C. 699, 62 S.E. 2d 327, and do not justify a nonsuit. *Keaton v. Taxi Co.,* 241 N.C. 589, 86 S.E. 2d 93.

Plaintiffs' allegations as to the facts are contained in paragraphs 9 and 10 of their complaint as follows:

"9. On or about 14 December 1959, at or about 5:19 p.m. the defendant Alvin E. Woods was driving his car in a southerly direction on an unnamed street one block east of Dan Allen Drive, on the campus of North Carolina State College in the city of Raleigh, N.C., toward the intersection of said street with University Drive; at the same time the defendant Paul L. Bailey, Jr. was driving the car owned by his father, the defendant Paul L. Bailey, in an easterly direction on University Drive on the campus of North Carolina State College in the city of Raleigh, N.C., toward the intersection of University Drive with the aforementioned unnamed street; the defendant Alvin E. Woods failed to yield the right of way to defendant Paul L. Bailey, Jr., as it was his duty to do, and without maintaining a sufficient lookout and without maintaining sufficient control over the speed and direction of his car, drove it into the aforesaid intersection, colliding with the left side of the car driven by the defendant Paul L. Bailey, Jr., and owned by the defendant Paul L. Bailey; the defendant Paul L. Bailey, Jr. drove into the intersection without maintaining a proper lookout and without maintaining sufficient control over the direction and speed of the car driven by him.

"10. After the collision between the defendants Alvin E. Woods and Paul L. Bailey, Jr., the car operated by the defendant Paul L. Bailey, Jr. was shoved and propelled by the impact of the aforementioned collision into the rear end of the automobile owned by the plaintiffs."

Plaintiffs' allegations, in part, as to the negligence of defendant Woods are: One. He operated his automobile without keeping a proper and careful lookout for persons travelling upon the streets. Two. "11. . . . (b). He drove his car upon the streets carelessly and heedlessly, in wanton and wilful disregard of the rights and safety of

others, and without due caution and circumspection and at a speed and in a manner so as to endanger or to be likely to endanger persons and property upon said streets, in violation of G.S., § 20-140." Plaintiffs have similar allegations as to negligence on the part of defendant Bailey, Jr. Plaintiffs also have an allegation as to negligence on the part of defendant Woods as follows: "He violated G.S., § 20-155, in that he failed to yield the right of way to the defendant Paul L. Bailey, Jr., as it was his duty to do."

G.S. 1-151 provides that pleadings "shall be liberally construed with a view to substantial justice between the parties."

This Court said in *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330: "It is the duty of the driver of a motor vehicle not merely to *look,* but to *keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen." *Kellogg v. Thomas,* 244 N.C. 722, 94 S.E. 2d 903.

G.S. 20-140(b) provides, "any person who drives any vehicle upon a highway without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property shall be guilty of reckless driving."

Plaintiffs' evidence shows that their automobile was parked on the south side of University Drive on the campus of North Carolina State College. G.S. 20-140 applies to reckless driving upon a highway. G.S. 20-140.1 is a similar statute as to reckless driving of a motor vehicle over any drive, driveway, road, roadway, street or alley upon the grounds and premises of any public or private hospital, college, university, school, etc.

It seems that the theory of the trial below was that University Drive and the unnamed street were highways within the purview of G.S. 20-140, and not roads, streets, etc., within the purview of G.S. 20-140.1 We are fortified in this assumption by the fact that the briefs of counsel do not raise this question or even mention G.S. 20-140.1 The complaint alleges the language of the statutes G.S. 20-140 and G.S. 20-140.1 in substance but not accurately as to reckless driving of an automobile, and we do not consider the fact that the complaint alleges a violation of G. S. 20-140, instead of a violation of G.S. 20-140.1, fatal to that allegation of negligence in the light of the provisions of G.S. 1-151, and the seeming theory of the trial below. If in fact G.S. 20-140.1 is applicable instead of G.S. 20-140, plaintiffs can request the court below to allow an amendment to their complaint to so allege.

The evidence of plaintiffs shows there were no road signs or traffic signal at or near the intersection, and that as the two automobiles

approached the intersection the Woods automobile was on the left. Therefore, what was said in *Mallette v. Cleaners, Inc.*, 245 N.C. 652, 97 S.E. 2d 245, is applicable here:

> "The evidence discloses no stop sign on the side of either street-approach to the intersection, nor any traffic control device over the center of the intersection. Therefore, upon the record as presented neither street was favored over the other, and the evidence is to be intrepreted in the light of G.S. 20-155, which provides in part:
>
> "'(a) When two vehicles approach or enter an intersection and/or junction at approximately the same time the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right . . .'
>
> "'(b) The driver of a vehicle approaching but not having entered an intersection and/or junction, shall yield the right-of-way to a vehicle already within such intersection and/or junction whether the vehicle in the junction is proceeding straight ahead or turning in either direction: . . .'"

G.S. 20-155(b) contains this proviso, which is not set forth in the *Mallette* case: "Provided, that this subsection shall not be interpreted as giving the right-of-way to a vehicle already in an intersection and/or junction when said vehicle is turning either to the right or left unless the driver of said vehicle has given a plainly visible signal of intention to turn as required in § 20-154."

It may be conceded that plaintiffs' evidence is not free of discrepancies and contradictions. Nevertheless, the portions on which plaintiffs rely, when weighed and considered and given every reasonable intendment and every legitimate inference to be drawn therefrom, as is the rule on a motion for judgment of compulsory nonsuit, are sufficient to justify but not compel an adjudication by the judge sitting here without a jury of actionable negligence on the part of defendant Woods and on the part of defendant Bailey, Jr. that caused their automobiles to collide in the intersection, and that the resulting collision of the Bailey automobile with the rear of plaintiffs' parked automobile followed so quickly and is so connected with the actionable negligence of Woods and Bailey, Jr., that it constituted a direct chain of events resulting from the actionable negligence of Woods and Bailey, Jr., and that such negligence on their part were the proximate causes of the damages to plaintiffs' automobile. The evidence in some respects is sufficient to justify

but not to compel a different adjudication by the judge as to negligence and proximate cause.

If defendant Bailey, Jr. is adjudicated guilty of actionable negligence that was one of the proximate causes of damage to plaintiffs' automobile, then, according to all the evidence in the record and the pleadings, Paul L. Bailey, the father of Paul L. Bailey, Jr., would be liable under the family purpose car doctrine, which obtains in North Carolina. *Elliott v. Killian,* 242 N.C. 471, 87 S.E. 2d 903; Strong's N.C. Index, Vol. I, Automobiles, § 55, pp. 314-316.

The trial judge should have overruled the motions for judgment of compusory nonsuit made by all the defendants. Plaintiffs' evidence is sufficient to require an adjudication by the judge sitting without a jury of the issues raised by the pleadings and plaintiffs' evidence. Of course, upon a re-hearing defendants, or any of them, may decide to offer evidence.

Reversed as to all defendants.