EVERETT ENOCH SHUE v. EDWARD SCHEIDT, COMMISSIONER OF MOTOR VEHICLES OF NORTH CAROLINA.

(Filed 18 May, 1960.)

1. **Automobiles § 25—**

The general maximum speed limit of motor vehicles in North Carolina is 55 m.p.h., the provisions of G.S. 20-141(b) 5, authorizing the State Highway Commission to designate a maximum speed limit of 60 m.p.h. for certain vehicles on certain highways, being in the nature of an exception.

2. **Statutes § 5a—**

The primary purpose in construing a statute is to give effect to the legislative intent.

3. **Automobiles § 2—**

A conviction of driving an automobile 75 m.p.h. in a zone designated by the State Highway Commission as a 45 m.p.h. speed zone, G.S. 20-141(d), requires a mandatory thirty-day suspension of the driver's license under the provisions of G.S. 20-16.1, since even though the latter statute does not refer to G.S. 20-141(d) it does refer to G.S. 20-141(b) 4, and a speed of 75 m.p.h. is more than 15 m.p.h. in excess of the general maximum speed of 55 m.p.h.

**4. Appeal and Error § 2—**

The Supreme Court in the exercise of its discretionary jurisdiction may decide a question of pressing public interest on the merits and disregard whether the question is presented by the proper procedure.

**5. Automobiles § 1—**

The operation of a motor vehicle on a public highway in this State is not a natural right but is a conditional privilege which the State may regulate in the exercise of its police power in the interest of public safety.

APPEAL by defendant from *Preyer, J.,* 16 November 1959 Civil Term, of GUILFORD — Greensboro Division.

Civil action to enjoin permanently defendant, Commissioner of Motor Vehicles of the State of North Carolina, from suspending, pursuant to the provisions of G.S. 20-16.1, the operator's and chauffeur's licenses of plaintiff.

From a judgment permanently enjoining the defendant, as prayed in the complaint, defendant appeals.

*Adams, Kleemeier & Hagan and Durward S. Jones for plaintiff, appellee.*

*T. W. Bruton, Attorney General, and Lucius W. Pullen, Assistant Attorney General, for defendant, appellant.*

PARKER, J. The parties, pursuant to the provisions of G.S. 1-184 by written consent filed with the clerk, waived a jury trial.

The court found the facts which were stipulated in writing by the parties. The facts found necessary for a decision of this appeal follow:

On 21 March 1955 defendant, Commissioner of Motor Vehicles of the State of North Carolina, issued to plaintiff, a resident of Guilford County, a renewal operator's license bearing number 78754, and on 4 April 1958 issued to plaintiff a renewal chauffeur's license bearing number 19973. On 20 January 1959 plaintiff was tried and convicted in the Municipal-County Court, Criminal Division, Greensboro, North Carolina, of operating on 27 December 1958 an automobile in Guilford County on a public highway at a speed of 75 miles per hour in a 45-miles per hour speed zone as charged in the warrant, and the clerk of that court sent a record of such conviction to defendant. Whereupon, defendant notified plaintiff that his renewal operator's and chauffeur's licenses had been suspended by him under authority of G.S. 20-16.1, said suspension to become effective 9 February 1959 and to remain in effect until 11 March 1959.

The court concluded that the offense of which plaintiff was convict-

ed is not covered by G.S. 20-16.1, and therefore defendant had no authority by virtue of G.S. 20-16.1 to suspend plaintiff's renewal licenses. Wherefore, the court permanently enjoined defendant from suspending plaintiff's renewal licenses for the offense for which he was convicted as set forth above.

The pertinent part of G.S. 20-16.1, which was in effect at all times relevant to this case, reads: "MANDATORY SUSPENSION OF DRIVER'S LICENSE UPON CONVICTION OF EXCESSIVE SPEEDING AND RECKLESS DRIVING. — Notwithstanding any other provisions of this article, the Department shall suspend for a period of thirty days the license of any operator or chauffeur without preliminary hearing on receiving a record of such operator's or chauffeur's conviction of having violated the laws against speeding by exceeding by more than fifteen miles per hour the speed limit set out in G.S. 20-218 or paragraph 3 or paragraph 4 of subsection (b) of G.S. 20-141." G.S. 20-16.1 was enacted by the General Assembly as Section 1 of Chapter 1223 of the 1953 Session Laws, and this Chapter 1223 is entitled "AN ACT TO FURTHER PROMOTE HIGHWAY SAFETY BY PROVIDING FOR THE MANDATORY SUSPENSION OF A DRIVER'S LICENSE UPON CONVICTION OF EXCESSIVE SPEEDING AND RECKLESS DRIVING."

The court found as a fact that plaintiff was convicted of driving an automobile at a speed of 75 miles per hour in a 45-miles per hour speed zone: his brief states he was driving a passenger automobile. Therefore, G.S. 20-218 relating to the speed of school busses, and paragraph 3 of subsection (b) of G.S. 20-141 referring to other vehicles than passenger automobiles, etc., have no application here. Subsection (b) and paragraph 4 of that subsection read: "Except as otherwise provided in this chapter, it shall be unlawful to operate a vehicle in excess of the following speeds: (4) Fifty-five miles per hour in places other than those named in paragraphs 1 (a business district) and 2 (a residential district) of this subsection for passenger cars . . ." The words inserted in parentheses in the above sentence are ours.

Before Chapter 1223, 1953 Session Laws, now codified as G.S. 20-16.1, was enacted, under G.S. 20-16 the licenses of persons convicted of speeding twice within a year were subject to suspension, but a single offense of speeding within a year did not subject a driver to suspension unless he was convicted of speeding more than 75 miles per hour. Chapter 1223 added a new section, G.S. 20-16.1, which requires a 30-day suspension of the license of a driver who is convicted of exceeding by more than 15 miles per hour any of three stated speed limits: the 35-miles per hour speed limit for school busses loaded with

children, and except as otherwise provided in G.S. Chapter 20, the 45-miles per hour speed limit in places other than a business and residential district for motor vehicles other than passenger cars, regular passenger vehicles, pick-up trucks of less than one-ton capacity, and school busses loaded with children, and the 55-miles per hour speed limit in places other than a business and residential district for passenger cars, regular passenger-carrying vehicles, and pick-up trucks of less than one-ton capacity. 31 N.C. Law Review, p. 414 (1953). Certainly a 45-miles per hour speed zone established by the Highway Commission by virtue of G.S. 20-141(d) is a place other than a business or residential district.

The general maximum speed limit of motor vehicles in North Carolina is, and was at the time when plaintiff was convicted of speeding, 55 miles per hour. G.S. 20-141(b) 4; S. v. Norris, 242 N.C. 47, 86 S.E. 2d 916. Chapter 214, 1957 Session Laws, now codified as G.S. 20-141(b) 5, authorized the State Highway Commission to designate a speed limit maximum of 60 miles per hour for certain vehicles on certain highways. In S. v. Brown, 250 N.C. 209, 108 S.E. 2d 233, this Court held that 55 miles per hour is the general maximum speed limit in this State and that the provisions of G.S. 20-141(b) 5 are in the nature of an exception.

Plaintiff contends that he was convicted of violating the 45-miles per hour speed zone limit established by the State Highway Commission by virtue of G.S. 20-141(d), not the 55-miles per hour speed limit established by G.S. 20-141(b) 4, which applies where no other speed limit has been put into effect. That G.S. 20-141(d) is not made a part of G.S. 20-16.1 expressly or by implication. That G.S. 20-16.1 by mentioning only three specific speed laws excluded all other speed laws from its operation. Therefore, G.S. 20-141(b) 4 has no application here.

In considering the meaning of the first sentence of G.S. 20-16.1 quoted above, "we must ascertain the intention of the Legislature and carry such intention into effect to the fullest degree." Ballard v. Charlotte, 235 N.C. 484, 70 S.E. 2d 575. "The legislative intent has been designated the vital part, heart, soul, and essence of the law, and the guiding star in the interpretation" of statutes. 50 Am. Jur., Statutes, Section 223.

"Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation, and the court has no right to look for or impose another meaning. In the case of such unambiguity, it is the established policy of the courts to regard the statute

as meaning what it says, and to avoid giving it any other construction than that which its words demand." 50 Am. Jur., Statutes, Section 225.

The clear, definite and unmistakable language of G.S. 20-16.1, in force at all times relevant here, requires that notwithstanding any other provisions of Article 2, Chapter 20 G.S., the Department of Motor Vehicles shall mandatorily suspend for a period of 30 days the license of any operator or chauffeur without preliminary hearing on receiving a record of such operator's or chauffeur's conviction of having violated the laws against speeding by exceeding by more than 15 miles per hour the speed limit of 55 miles per hour for passenger cars in places other than a business district or a residential district as those districts are named in G.S. 20-141(b) (1) and (2), except a higher speed in places is provided for in G.S. Chapter 20. Plaintiff was convicted of driving his passenger automobile at a speed of 75 miles per hour on a public highway in Guilford County in a 45-miles per hour speed zone, which is a speed exceeding by more than 15 miles per hour the maximum speed limit of the State fixed by G.S. 20-141(b) 4. The fact that the place was a 45-miles per hour speed zone indicates it was not a business or residential district. Certainly according to the facts found, plaintiff was convicted of, and was guilty of speeding by exceeding by more than 15 miles per hour the general maximum speed limit of 55 miles per hour established by G.S. 20-141(b) 4 in a place other than a business or residential district, and this is true even though the place was a 45-miles per hour speed zone. In our opinion, the plain and unambiguous words of the statute demand the interpretation that driving a passenger car in a 45-miles per hour speed zone at a speed of 75 miles per hour is a violation of G.S. 20-141(b) 4, that such was the legislative intent, that such an interpretation clearly comes within the scope of the language used in the statute, and that G.S. 20-141(b) 4 is applicable here. G.S. 20-16.1 was enacted to promote highway safety by providing for the mandatory suspension of a driver's license upon conviction of excessive speeding and reckless driving. To accept plaintiff's contention would require an interpretation of G.S. 20-16.1 and G.S. 20-141(b) 4 to the effect that plaintiff's licenses could be suspended if he had been driving his automobile 75 miles per hour in the open country, but his licenses cannot be suspended because he was driving it at a speed of 75 miles per hour in a 45-miles speed zone. That would be a stinting and narrow interpretation of the statutes not justified by the language used therein, and plainly not the intention of the General Assembly.

The first sentence of G.S. 20-16.1 was rewritten by Section 4 of Chapter 1264, 1959 Session Laws, which became effective 1 October 1959, by adding paragraph (5) of subsection (b) of G.S. 20-141 (fixing a speed under certain conditions not to exceed 60 miles per hour) to paragraphs (3) and (4) of the same subsection, and by adding the following: "or on receiving a record of conviction for speeding within the corporate limits of any city or town where such operator or chauffeur exceeded a speed of fifty-five miles per hour, or a speed of sixty miles per hour if such higher limit was posted and in effect."

We are not inadvertent to the two serious questions presented by the procedure followed in this case: One, can the plaintiff contest the mandatory suspension under G.S. 20-16.1 of his licenses by defendant by a suit in equity, and two, can the defendant appeal from the order entered? Defendant in his brief recognizes the procedural question, and states he does not desire to raise any objection to the procedure adopted, for the reason that for several years the Department of Motor Vehicles has been suspending drivers' licenses for a 30-day period based on a record of speeding conviction similar to the one involved in this case, and he seeks a construction of the pertinent provisions of G.S. 20-16.1 as it was applied here, and if the interpretation placed by him on the statute in the instant case is incorrect, then the plaintiff should not have his licenses suspended for 30 days. Considering that the public interest requires that a prompt and definite answer be given to the question here presented for decision as to whether or not plaintiff's licenses upon the facts found are subject to a 30-day suspension under the relevant provisions of G.S. 20-16.1, we have decided to disregard the procedural problem and decide the appeal.

The operation of a motor vehicle on a public highway is not a natural right. It is a conditional privilege which the State in the interest of public safety acting under its police power may regulate or control, and suspend or revoke the driver's license. *In re Revocation of License of Wright*, 228 N.C. 584, 46 S.E. 2d 696; *Commonwealth v. Ellett*, 174 Va. 403, 4 S.E. 2d 762. As this Court said in *Harvell v. Scheidt, Comr. of Motor Vehicles*, 249 N.C. 699, 107 S.E. 2d 549: ". . . the suspension or revocation of a driver's license is no part of the punishment for the violation or violations of traffic laws. . . . The purpose of the suspension or revocation of a driver's license is to protect the public and not to punish the licensee."

The defendant's assignments of error to the conclusions of law of the trial judge and to the judgment granting the restraining order are sustained, and the judgment below is reversed. The court below

is directed to enter judgment reversing the judgment entered herein, to dismiss the suit and tax plaintiff with the costs.

Reversed.