CLAUDE ANDREW GIBSON v. EDWARD SCHEIDT,
COMMISSIONER OF MOTOR VEHICLES.

(Filed 1 May 1963.)

1. Automobiles § 2—

The Department of Motor Vehicles is given exclusive authority to issue, suspend, or revoke licenses to operators of motor vehicles upon the public highways of the State, but a license is a privilege in the nature of a right of which the licensee may not be deprived except upon the conditions and in the manner prescribed by statute.

2. Same—

The suspension or revocation of an operator's or chauffeur's license for driving during the period of revocation or suspension of license must be based upon a conviction of that offense, and neither a conviction of driving 75 miles per hour in a 60 miles per hour zone, nor a conviction of having no driver's license, warrants a suspension or revocation of license under G.S. 20-28(a), nor do such convictions warrant the mandatory suspension or revocation of license, G.S. 20-17, G.S. 20-16.1, G.S. 20-16(a)(1), nor the suspension of license under G.S. 20-16.

PARKER, J., dissents.

APPEAL by plaintiff from *Copeland, Special Judge*, January 7, 1963, Civil Term of WAKE.

Proceeding under G.S. 20-25 for review of an order issued February 23, 1962, by the Department of Motor Vehicles directing that petitioner's North Carolina motor vehicle operator's license and also his California license be suspended effective January 18, 1962, until January 18, 1964, heard below on the facts set forth in a stipulation dated January 7, 1963, to wit:

"1. The plaintiff is at present a resident of the City of San Diego, State of California, where he lives at 4124 Campus Avenue, Apartment #6. The plaintiff is now playing professional football under a contract with the San Diego Bears.

"2. Before June, 1961, the plaintiff resided in the City of Asheville, Buncombe County, North Carolina. He attended North Carolina State College through the years 1958, 1959, 1960, and January through May of 1961.

"3. On July 21, 1958 the plaintiff obtained a motor vehicle operator's license issued by the State of North Carolina, which license expired on May 26, 1962.

"4. On May 2, 1960 the plaintiff was convicted in the Recorder's Court of Randolph County of speeding 80 miles per hour.

He was directed to pay a fine of $35.00 and costs, to surrender his operator's license and not to operate a motor vehicle until his license was returned.

"5. On May 20, 1960 the Director of the North Carolina Department of Motor Vehicles issued an order of suspension to the plaintiff directing that his North Carolina motor vehicle operator's license be suspended for a period of 90 days effective from May 2, 1960 until August 2, 1960. The cause of suspension was stated: 'speeding over 75 miles per hour, G.S. 20-16.1, G.S. 20-16(10). Date of conv: May 2, 1960.'

"6. After the plaintiff's conviction on May 2, 1960, and before issuance of the suspension order of May 20, 1960, the plaintiff requested a hearing on the suspension order before an officer of the Department of Motor Vehicles. The Hearing Officer recommended that 30 days be deducted from the period of suspension provided the plaintiff successfully completed a driver improvement clinic. This recommendation was approved by Ralph C. Stephens, the Chief Hearing Officer, on May 20, 1960. The records of the Motor Vehicle Department show that the plaintiff successfully completed the driver improvement clinic on July 12, 1960.

"7. The official records of the North Carolina Motor Vehicle Department contain a second order of suspension dated May 20, 1960 similar to the order referred to in Paragraph 5, with the exception that the following words have been superimposed on the face of the record: 'Reinstate July 2, 1960, provided the provisions of the Safety Responsibility Act (G.S. 20-279.1 — 20-279.30) has (sic) been complied with. B.C.B., Reviewing Officer.'

"8. The plaintiff failed to file proof of financial responsibility with the North Carolina Motor Vehicles Department as required by G.S. 20-279 until November 30, 1962.

"9. On July 8, 1960 the plaintiff was charged with the offense of no driver's license. He was tried for this offense in the Raleigh City Court on July 27, 1960, was convicted, and was ordered to pay a fine of $25.00 and costs.

"10. On July 11, 1960 the North Carolina Department of Motor Vehicles issued an order to the City Police of Raleigh, North Carolina to pick up the operator's license of the plaintiff for the reason that he had been convicted of speeding over 75 miles per hour in Recorder's Court, Randolph County. This order was served July 11, 1960 by G. W. Mann of the Raleigh Police Department.

"11. On March 24, 1961 the North Carolina Department of Motor Vehicles issued an order of suspension to the plaintiff suspending his operator's license for one additional year to the prior suspension or until August 2, 1961. The cause of suspension was: 'driving while license suspended by no operator's license. G.S. 20-28 date of conv: July 27, 1960, City Court, Raleigh, North Carolina.'

"12. The plaintiff moved to San Diego, California in June, 1961 and began playing professional football under his contract with the San Diego Bears in August, 1961.

"13. On November 21, 1961 in San Diego, California the plaintiff obtained a State of California Driver's License which will expire on May 26, 1964. On said date the plaintiff purchased an automobile, and also obtained an automobile liability insurance policy, being Northwestern Mutual Insurance Company Policy No. 7108-4401, a copy of which is attached hereto.

"14. In January, 1962, the plaintiff returned to North Carolina to take additional work at North Carolina State College. On January 2, 1962 the plaintiff was charged with speeding 75 miles per hour in a 60 mile-per-hour zone in High Point, North Carolina. He waived appearance and was convicted in the Municipal Court of High Point on January 18, 1962. He was fined $15.00 and ordered to pay court costs. The records of the court show that he had a California driver's license and was driving an automobile with a California license plate.

"15. On February 23, 1962 the Department of Motor Vehicles issued an order of suspension to the plaintiff directing that his North Carolina motor vehicle operator's license and also his California license be suspended effective January 18, 1962 until January 18, 1964. The cause of suspension was stated as: 'driving while license suspended (second offense) by speeding 75 mph. G.S. 20-28. Date of Offense: January 2, 1962, Municipal Court, High Point, N. C.'

"16. The defendant herein is the Commissioner of Motor Vehicles, State of North Carolina.

"17. The plaintiff on November 30, 1962 purchased National Indemnity Company Automobile Insurance Policy No. ACEE-204704. Said insurance company has filed due and proper proof of financial responsibility with the North Carolina Department of Motor Vehicles, and such filing is still in effect."

From judgment affirming the Department's said order of February 23, 1962, plaintiff appeals.

*William Joslin for plaintiff appellant.*
*Attorney General Bruton and Assistant Attorney General Barham for defendant appellee.*

BOBBITT, J. Plaintiff was convicted on May 2, 1960, of operating a motor vehicle upon the public highways at a speed in excess of seventy-five miles per hour. For this offense, G.S. 20-16(a)(10) and G.S. 20-19(b) authorized the issuance on May 20, 1960, of the order suspending plaintiff's operator's license from May 2, 1960, until August 2, 1960.

The order issued March 24, 1961, suspending plaintiff's operator's license for an additional year, that is, until August 2, 1961, was based on plaintiff's conviction on July 27, 1960, in the City Court of Raleigh, of operating a motor vehicle upon the public highways on July 8, 1960, without an operator's license. The order issued February 23, 1962, suspending plaintiff's operator's license for two years, that is, until January 18, 1964, was based on plaintiff's conviction on January 18, 1962, in the Municipal Court of High Point, of operating an automobile upon the public highways on January 2, 1962, at a speed of seventy-five miles per hour in a sixty-mile per hour zone.

Neither the offense for which plaintiff was convicted in the City Court of Raleigh nor that for which he was convicted in the Municipal Court of High Point is an offense for which upon conviction the suspension or revocation of an operator's license is mandatory. G.S. 20-17, G.S. 20-16.1, G.S. 20-16(a)(1). Moreover, neither is an offense for which the Department is authorized by G.S. 20-16 to suspend an operator's license.

G.S. 20-28(a), the statute on which defendant relies as authority for the order of February 23, 1962, in part, provides:

"Any person whose operator's or chauffeur's license has been suspended or revoked other than permanently, as provided in this chapter, who shall drive any motor vehicle upon the highways of the State while such license is suspended or revoked shall be guilty of a misdemeanor and his license shall be suspended or revoked, as the case may be, for an additional period of one year for the first offense, two years for the second offense, and permanently for a third or subsequent offense; . . .

"Notwithstanding any other provisions of this section, in those cases *of conviction of the offense provided in this section* in which the

judge and solicitor of the court wherein *a conviction for violation of this section was obtained* recommend in writing to the Department that the Department examine into the facts of the case and exercise discretion in suspending or revoking the driver's license for the additional periods provided by this section, the Department shall conduct a hearing and may impose a lesser period of additional suspension or revocation than that provided in this section or may refrain from imposing any additional period. Any person *convicted of violating this section* before or after May 14, 1959, shall be entitled to the benefit of the foregoing relief provisions.

"Upon conviction, a violator of this section shall be punished by a fine of not less than two hundred dollars ($200.00) or imprisonment in the discretion of the court, or both; provided, however, the restoree of a suspended or revoked operator's or chauffeur's license who operates a motor vehicle upon the streets or highways of the State without maintaining financial responsibility as provided by law shall be punished as for operating without an operator's license." (Our italics)

G.S. Chapter 20, Article 2, entitled "Uniform Driver's License Act," vests exclusively in the State Department of Motor Vehicles the issuance, suspension and revocation of licenses to operate motor vehicles upon the public highways. *Fox v. Scheidt, Comr. of Motor Vehicles,* 241 N.C. 31, 34, 84 S.E. 2d 259, and cases cited; *Honeycutt v. Scheidt,* 254 N.C. 607, 608, 119 S.E. 2d 777. However, "(a) license to operate a motor vehicle is a privilege in the nature of a right of which the licensee may not be deprived save in the manner and upon the conditions prescribed by statute." *In re Revocation of License of Wright,* 228 N.C. 584, 46 S.E. 2d 696; *Harvell v. Scheidt, Comr. of Motor Vehicles,* 249 N.C. 699, 706, 107 S.E. 2d 549.

It is mandatory for the Department to revoke the license of any operator upon receiving a record of such operator's *conviction* of any offense listed in G.S. 20-17. *Carmichael v. Scheidt, Comr. of Motor Vehicles,* 249 N.C. 472, 106 S.E. 2d 685. It is mandatory for the Department to suspend for thirty days the license of any operator on receiving a record of such operator's *conviction* of any offense listed in G.S. 20-16.1 *Shue v. Scheidt, Comr. of Motor Vehicles,* 252 N.C. 561, 114 S.E. 2d 237. As a basis for suspension or revocation of an operator's license, a plea of *nolo contendere* has the same effect as a conviction or plea of guilty of *such offense. Mintz v. Scheidt,* 241 N.C. 268, 84 S.E. 2d 882, and cases cited.

Subject to the provision discussed below, "*(c)onviction* of operating a motor vehicle when operator's license has been suspended makes mandatory an additional suspension of his license, G.S. 20-28." (Our

italics) *Beaver v. Scheidt, Comr. of Motor Vehicles,* 251 N.C. 671, 111 S.E. 2d 881. G.S. 20-16(a), in part, provides that "(t)he Department shall have authority to suspend the license of any operator or chauffeur with or without preliminary hearing upon a showing by its records or other satisfactory evidence that the licensee: (1) Has committed an offense for which mandatory revocation of license is required *upon conviction.*" (Our italics)

Here, plaintiff has never been convicted of or tried for the offense defined in G.S. 20-28(a), namely, the operation of a motor vehicle while his operator's license was suspended or revoked. Unless and until he is so tried and convicted, G.S. 20-28(a) vests no authority in the Department in respect of the suspension or revocation of his operator's license.

Defendant contends plaintiff's convictions in the City Court of Raleigh and in the Municipal Court of High Point for offenses involving the operation of a motor vehicle upon the public highways are sufficient to authorize and *require* the order of February 23, 1962. (Hence, the order of February 23, 1962, was issued without prior notice to plaintiff or hearing.) This contention ignores the *second* paragraph of G.S. 20-28(a), made an integral part of G.S. 20-28 by Chapter 1406, Session Laws of 1957, which indicates plainly that suspension for an additional period or revocation must be based on a *conviction for violation of G.S. 20-28(a).* It provides further that, in the event of *such conviction,* if the solicitor and judge of the court in which the operator is convicted so recommend in writing, suspension for an additional period or revocation is not mandatory but within the discretion of the Department after it has conducted a hearing. Obviously, the General Assembly anticipated there would be hardship cases where the violation of G.S. 20-28(a) would be technical rather than wilful. Defendant's contention is in conflict with the language and with the purpose of said 1957 amendment.

The judgment of the court below is reversed on the ground that, absent a conviction of plaintiff for the criminal offense defined in G.S. 20-28(a), the Department's order of February 23, 1962, was not authorized by G.S. 20-28(a) or otherwise. We do not reach and therefore do not discuss other questions debated in the briefs.

Reversed.

PARKER, J., dissents.