JAMES C. UNDERWOOD v. RALPH L. HOWLAND, COMMISSIONER OF MOTOR VEHICLES OF THE STATE OF NORTH CAROLINA
No. 357

(Filed 20 November 1968)

**1. Automobiles § 2— revocation of driver's license — review in Superior Court**

Discretionary suspensions and revocations of licenses by the Department of Motor Vehicles are reviewable *de novo* in the Superior Court under G.S. 20-25, but mandatory revocations are not so reviewable.

**2. Automobiles § 2— driving after revocation — mandatory additional revocation**

A moving violation committed while the operator's license is in a state of suspension makes revocation for an additional period mandatory under G.S. 20-28.1.

**3. Automobiles § 2— moving violation — driving while license suspended**

Driving a motor vehicle on a public highway without a valid operator's license is a moving violation within the meaning of G.S. 20-28.1.

**4. Automobiles § 2— driving while license suspended — mandatory revocation**

The Department of Motor Vehicles is required by G.S. 20-28.1 to revoke the license of any person convicted of operating a motor vehicle upon the public highways of the State while such person's license to operate a motor vehicle is in a state of suspension, the period of revocation being one year for the first offense.

**5. Statutes § 5— legislative intent**

The legislative will is the controlling factor in the interpretation of statutes.

**6. Statutes § 5— rules of construction**

Where a strict literal interpretation of the language of a statute would contravene the manifest purpose of the legislature, the reason and purpose of the law should control, and the strict letter thereof should be disregarded.

**7. Statutes § 5— rules of construction**

If the language of a statute is clear and unambiguous, its plain and definite meaning controls and judicial construction is not necessary; if

the language is ambiguous and the meaning doubtful, judicial construction is required to ascertain the legislative intent.

**8. Statutes § 5— rules of construction**

Words and phrases of a statute must be construed as a part of the composite whole and accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit.

**9. Automobiles § 2— driving while license suspended — effective date of additional suspension**

The provision of G.S. 20-28.1 requiring the Department of Motor Vehicles, upon receipt of notice of a licensee's conviction of a moving violation committed while his license was in a state of suspension, to revoke that person's license for an additional period of one year "effective on the date set for termination of the suspension or revocation which was in effect at the time of such offense" means only that the initial period of suspension and the additional one year period of revocation shall run consecutively and that no part thereof shall run concurrently, the additional revocation being mandatory even though it may occur after the initial suspension has expired and it becomes effective after the termination date of the initial suspension.

**10. Automobiles § 2— suspension of driver's license — review in Superior Court — mandatory suspension**

In a proceeding under G.S. 20-25 for review of an order of the Commissioner of Motor Vehicles revoking plaintiff's license, demurrer is properly sustained to a petition alleging that notice of plaintiff's conviction of a moving violation committed during a period of suspension was received by the Department of Motor Vehicles after the termination date of the initial suspension, and that plaintiff's license was thereafter revoked for an additional year by the Department, it appearing on the face of the petition that the revocation was mandatory under G.S. 20-28.1.

ON Certiorari to the Court of Appeals to review its decision reported in 1 N.C. App. 560, 162 S.E. 2d 124.

Proceeding under G.S. 20-25 for review of an order of the Commissioner of Motor Vehicles revoking plaintiff's license to operate a motor vehicle on the highways of the State. Pertinent allegations of the petition are summarized as follows:

1. On February 27, 1968, plaintiff held a valid license to operate a motor vehicle on the highways of North Carolina.

2. On February 27, 1968, defendant mailed plaintiff a notice reading in pertinent part as follows:

"Effective Mar. 04, 1968 your North Carolina Motor Vehicle driving privilege is revoked one year for conviction of a moving violation while license suspended or revoked — G.S. 20-28.1.

"You may apply for a license Mar. 04, 1969.

"Section 20 of the Motor Vehicles Laws of North Carolina requires that you surrender your driver license to the Department of Motor Vehicles upon receipt of this notice. You are directed to mail all driver licenses in your possession to the department on the effective date of this order if you have not previously turned them in to the court or surrendered them to the department."

3. In compliance with said notice, plaintiff mailed his operator's license to the Department of Motor Vehicles.

4. Plaintiff was thereafter advised by legal counsel that the grounds upon which defendant purported to revoke his operator's license were unlawful and that plaintiff was entitled to a return of his license and was lawfully entitled to continue to operate a motor vehicle upon the highways of the State. On March 8, 1968, plaintiff made formal demand for a return of his license but the defendant has willfully retained it without legal authority.

5. The records maintained by the Department of Motor Vehicles show: (a) that plaintiff's license to operate a motor vehicle was in a state of suspension from July 13, 1966, to October 13, 1966; (b) that on August 28, 1966, during said period of suspension, plaintiff was charged with operating a motor vehicle without a license; and (c) that plaintiff was convicted of said offense in the County Court of Wayne County on January 31, 1968.

6. Defendant has revoked plaintiff's license from March 4, 1968, to March 4, 1969, relying for his authority on G.S. 20-28.1 and contending that such revocation is mandatory by reason of the matters above set out in Paragraph 5.

7. Under the express language of G.S. 20-28.1, plaintiff's license could not be suspended for any period other than the period beginning October 13, 1966, and ending October 13, 1967. Defendant's attempt to revoke it for one year beginning March 4, 1968, and ending March 4, 1969, is arbitrary, unauthorized, and an abuse of his authority.

8. Plaintiff has not operated a motor vehicle upon the highways of North Carolina since mailing his operator's license to the Department of Motor Vehicles, but he is entitled to the immediate return of his license and all the rights and privileges which go with it.

Defendant demurred to the petition, saying:

"That the complaint does not state facts sufficient to constitute a cause of action against the respondent in that the allegations of the petition purport to bring on for review in the Su-

perior Court action which has been taken by the respondent pertaining to the privilege of the petitioner to operate a motor vehicle in a case where upon the facts alleged in the petition the action of the respondent is required by statute and no review by the Superior Court of this action is provided.

"WHEREFORE, the defendant prays that this action be dismissed."

The trial court sustained the demurrer and dismissed the proceeding. Plaintiff appealed to the Court of Appeals where the judgment of the superior court was reversed. Defendant's petition for certiorari was allowed.

*Thomas Wade Bruton, Attorney General, William W. Melvin, Assistant Attorney General, T. Buie Costen, Staff Attorney, Attorneys for defendant appellant.*

*Herbert B. Hulse, Attorney for plaintiff appellee.*

HUSKINS, J.

[1] Plaintiff instituted this proceeding under G.S. 20-25 seeking judicial review of the facts surrounding the revocation of his operator's license and a determination that he is entitled to its return. Under that statute, any person who has been denied a driver's license or whose license has been cancelled, suspended, or revoked, *except mandatory cancellations, suspensions and revocations,* has a right to file a petition in the superior court of the county wherein he resides; and said court is vested with jurisdiction and charged with the duty "to take testimony and examine into the facts of the case, and to determine whether the petitioner is entitled to a license or is subject to suspension, cancellation or revocation of license under the provisions of this article." G.S. 20-25. Discretionary revocations and suspensions may be reviewed by the court under this statute, while mandatory revocations and suspensions may not. "A license to operate a motor vehicle is a privilege in the nature of a right of which the licensee may not be deprived save in the manner and upon the conditions prescribed by statute. These, under express provisions of the Act, include full *de novo* review by a Superior Court judge, at the election of the licensee, in all cases except where the suspension or revocation is mandatory." *In Re Revocation of License of Wright,* 228 N.C. 584, 589, 46 S.E. 2d 696, 699.

Plaintiff alleges, and the demurrer admits, these facts: (1) Plaintiff's license to operate a motor vehicle was in a state of suspension from July 13, 1966, to October 13, 1966; (2) on August 28, 1966, dur-

ing said period of suspension, plaintiff was charged with operating a motor vehicle upon the highways of North Carolina without a license; and (3) plaintiff was convicted of said offense in the County Court of Wayne County on January 31, 1968. Upon these admitted facts, is revocation of plaintiff's license for a period of one year mandatory under the provisions of G.S. 20-28.1? If so, is a period of suspension beginning March 4, 1968, and ending March 4, 1969, authorized by G.S. 20-28.1?

Prior to 1965, operating a motor vehicle upon the public highways of the State without a valid operator's license was not an offense for which, upon conviction, the suspension or revocation of an operator's license was authorized, even though such offense was committed while the offender's license to operate a motor vehicle was suspended. Such was the law when *Gibson v. Scheidt, Comr. of Motor Vehicles*, 259 N.C. 339, 130 S.E. 2d 679 (1963) was decided. There, Gibson had been convicted of speeding in one case and of operating a motor vehicle without a valid operator's license in a second case, both offenses having been committed during a period when his operator's license was suspended. It was held that neither conviction authorized the Department of Motor Vehicles to suspend or revoke Gibson's license under G.S. 20-16, G.S. 20-16.1, G.S. 20-16(a)(1), or G.S. 20-17. Furthermore, since Gibson was not charged with and convicted of the offense of driving while his license was suspended or revoked, as he might have been, the Department of Motor Vehicles was without authority to revoke his license under G.S. 20-28(a).

The decision in *Gibson* spawned the enactment of Chapter 286 of the Session Laws of 1965, codified as G.S. 20-28.1 which reads in part as follows: "Upon receipt of notice of conviction of any motor vehicle moving violation committed while driving a motor vehicle, such offense having been committed while such person's operator's . . . license was in a state of suspension or revocation, the Department shall revoke the person's license effective on the date set for termination of the suspension or revocation which was in effect at the time of such offense." This statute further provides that the period of revocation for the first offense shall be one year.

**[2]** A moving violation committed while the operator's license is in a state of suspension makes revocation for an additional period mandatory under G.S. 20-28.1. *Carson v. Godwin*, 269 N.C. 744, 153 S.E. 2d 473.

**[3]** Driving a motor vehicle on a public highway without a valid operator's license is a moving violation within the meaning of G.S.

20-28.1. It is an offense which cannot be committed without driving a motor vehicle upon a public highway. "Driving" or "operating" a motor vehicle imports motion. *State v. Hatcher,* 210 N.C. 55, 185 S.E. 435. That the General Assembly intended such offense to be a moving violation is implied by a reading of G.S. 20-16(c) where many specific offenses are enumerated in a schedule of point values. This schedule includes not only the offense of "no operator's license" but also such obvious moving violations as "passing stopped school bus", "reckless driving", "driving on wrong side of road", "failure to stop for siren", etc. The schedule then concludes with the words "all other moving violations." The clear implication is that the legislature considered the enumerated offenses, including "no operator's license", to be moving violations.

[4-6]    Hence, we hold that the Department of Motor Vehicles is required by G.S. 20-28.1 to revoke the license of any person convicted of operating a motor vehicle upon the public highways of the State without a valid operator's license when such offense is committed while such person's license to operate a motor vehicle is in a state of suspension. The period of revocation is one year for the first offense. When does this period begin? In the case before us, plaintiff contends the words "effective on the date set for termination of the suspension or revocation which was in effect at the time of such offense" requires the period of revocation to begin October 13, 1966. Since the Commissioner of Motor Vehicles took no action until February 27, 1968, plaintiff contends he was then legally powerless to take any action at all. This requires us to construe and interpret the language of the statute. In this task we are guided by the primary rule of construction that the intent of the legislature controls. "In the interpretation of statutes, the legislative will is the all important or controlling factor. Indeed, it is frequently stated in effect that the intention of the legislature constitutes the law. The legislative intent has been designated the vital part, heart, soul, and essence of the law, and the guiding star in the interpretation thereof." 50 Am. Jur., Statutes, Sec. 223. As stated by Bobbitt, J., in *Lockwood v. McCaskill,* 261 N.C. 754, 757, 136 S.E. 2d 67, 69: "In performing our judicial task, 'we must avoid a construction which will operate to defeat or impair the object of the statute, if we can reasonably do so without violence to the legislative language.' *Ballard v. Charlotte,* 235 N.C. 484, 487, 70 S.E. 2d 575 [577]." Furthermore, ". . . where a strict literal interpretation of the language of a statute would contravene the manifest purpose of the Legislature, the reason and purpose of the law should control, and the strict letter thereof should be disregarded. *S. v. Barksdale,* 181 N.C. 621, 107 S.E. 505." *Duncan*

*v. Carpenter,* 233 N.C. 422, 426, 64 S.E. 2d 410, 413. And, where possible, "the language of a statute will be interpreted so as to avoid an absurd consequence. *Young v. Whitehall Co.,* 229 N.C. 360, 49 S.E. 2d 797; *State v. Scales,* 172 N.C. 915, 90 S.E. 439. A statute is never to be construed so as to require an impossibility if that result can be avoided by another fair and reasonable construction of its terms." *Hobbs v. Moore County,* 267 N.C. 665, 671, 149 S.E. 2d 1, 5.

[7]    If the language of a statute is clear and unambiguous, judicial construction is not necessary. Its plain and definite meaning controls. *Davis v. Granite Corporation,* 259 N.C. 672, 131 S.E. 2d 335. But if the language is ambiguous and the meaning in doubt, judicial construction is required to ascertain the legislative intent. *State v. Humphries,* 210 N.C. 406, 186 S.E. 473; *Young v. Whitehall Co., supra* (229 N.C. 360, 49 S.E. 2d 797).

[8]    Words and phrases of a statute "must be construed as a part of the composite whole and accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit." 7 Strong's N. C. Index 2d, Statutes, Sec. 5.

[9]    G.S. 20-28.1 required the Department of Motor Vehicles (1) upon receipt of notice of plaintiff's conviction (2) of a moving violation (3) committed while his operator's license was in a state of suspension (4) to revoke his license for an additional period of one year (5) "effective on the date set for termination of the suspension or revocation which was in effect at the time of such offense." The words in quotations must be interpreted in context so as to render them harmonious with the intent and tenor of the entire statute and must be accorded the meaning which harmonizes with the other modifying provisions so as to give effect to the reason and purpose of the law. *Watson Industries v. Shaw, Comr. of Revenue,* 235 N.C. 203, 69 S.E. 2d 505. So, when this statute is subjected to these rules of construction the quoted language means that the one year period of revocation shall not overlap the initial period of suspension. It means that the initial period of suspension and the additional one year period of revocation shall run consecutively and no part thereof shall run concurrently. Obviously, the Department had no authority to take action prior to receipt of notice of plaintiff's conviction. The interpretation urged by plaintiff would require the impossible and would defeat the reason and purpose of the law. Thus, the strict letter must be disregarded and the effective date of the additional period of suspension must be construed in light of the whole statute and accorded that meaning which harmonizes with the clear legislative intent.

[10] It appearing on the face of the petition that the action taken by defendant was mandatory under G.S. 20-28.1, the trial court properly sustained the demurrer and dismissed the proceeding.

The decision of the Court of Appeals was erroneous and is

Reversed.