ALTON PARKER TAYLOR, JR. v. JOE W. GARRETT, COMMISSIONER OF THE NORTH CAROLINA MOTOR VEHICLES DEPARTMENT

No. 7010SC194

(Filed 1 April 1970)

**1. Automobiles § 2—   revocation of driver's license — review**

Trial court properly concluded that it had no jurisdiction to grant a petitioner relief from an order of the Commissioner of Motor Vehicles permanently revoking the petitioner's driver's license pursuant to G.S. 20-28.1.

**2. Automobiles § 2—   reinstatement of license following suspension — driving while license suspended**

The purported filing of a SR-22 insurance certificate with the Commis-

sioner of Motor Vehicles by a petitioner whose driver's license had been suspended for 60 days did not automatically reinstate the petitioner's license, and the license remained in a state of suspension following the expiration of the 60-day period, G.S. 20-279.17; and where petitioner was convicted of a number of driving offenses during the continued suspension, the Commissioner was authorized to revoke permanently petitioner's license pursuant to G.S. 20-28.1.

APPEAL by petitioner from *Bailey, J.,* 5 January 1970 Civil Session, WAKE Superior Court.

On 28 November 1969 petitioner filed a petition in the office of the Clerk of the Superior Court of Wake County allegedly pursuant to G.S. 20-25 asking the court to rescind an order of respondent permanently revoking petitioner's operator's license. Allegations of the petition are summarized as follows: Prior to 21 July 1964, petitioner was issued a North Carolina driver's license. On said date his privilege to drive was suspended by the North Carolina Department of Motor Vehicles (DMV) pursuant to G.S. 20-16 for 60 days as a result of two offenses of speeding over 55 m.p.h. within a one-year period. After said 60-day period expired, petitioner sent to DMV a SR-22 insurance certificate as provided for in G.S. 20-279.17; after 21 September 1964, petitioner received no communication from DMV that his license had been suspended or revoked. On 28 June 1965, petitioner was convicted in the Winston-Salem Municipal Court of speeding 50 m.p.h. in a 35 m.p.h. zone. On 31 November 1965, he was convicted in a J.P. Court in Troy, North Carolina, of driving on the wrong side of the road. On 7 October 1966, he pled guilty and was convicted in Recorders Court in Trenton, North Carolina, of speeding 70 m.p.h. in a 60 m.p.h. zone. Respondent has notified petitioner that his operator's license has been permanently revoked, respondent contending that DMV never received a SR-22 insurance certificate. Petitioner complied with G.S. 20-279.17 by duly filing said certificate and respondent is not justified in permanently revoking petitioner's license.

In his answer, respondent admitted the suspension of petitioner's license on 21 July 1964, the convictions of petitioner, the permanent revocation of petitioner's license and his notification thereof, but denied that DMV ever received the SR-22 insurance certificate. Respondent further alleged that petitioner's driving privilege was revoked for the reason that petitioner was convicted of three motor vehicle moving violations committed during a period of license suspension.

The judgment entered is summarized as follows: After considering the pleadings, exhibits presented consisting of a certified driver's

license record (six pages) and an expired North Carolina driver's license, admissions of counsel made in open court and argument of counsel, the court finds: That by order dated 27 October 1966, petitioner's driving privilege was permanently revoked under G.S. 20-28.1 on the basis of the three convictions admitted in paragraph IV of the petition; that petitioner learned of said revocation early in 1968; that subsequently petitioner was convicted of the following traffic offenses: driving with no operator's license on 30 September 1968, driving with no operator's license and speeding 58 m.p.h. in a 45 zone on 5 March 1969, and driving with no operator's license on 25 May 1969. On 22 November 1968, a second order permanently revoking petitioner's driving privilege was issued pursuant to G.S. 20-28.1. The court concludes that petitioner's driving privilege was permanently revoked on 27 October 1966 and 22 November 1968 under the mandatory provisions of G.S. 20-28.1; that petitioner by his admission had personal knowledge early in 1968 of the permanent revocation of his driving privilege; that permanent revocation under G.S. 20-28.1 of petitioner's driving privilege by respondent is justified in law and fact upon the convictions aforesaid; and that the superior court has no jurisdiction to grant the relief sought in the petition for that the actions of respondent were mandatory in nature. The action of respondent is affirmed and this action is dismissed at the cost of petitioner.

Petitioner appeals from the judgment, assigning error.

*William T. McCuiston for petitioner appellant.*

*Attorney General Robert Morgan, Assistant Attorney General William W. Melvin and Staff Attorney T. Buie Costen for respondent appellee.*

BRITT, J.

[1]    The conclusion of the superior court that it had no jurisdiction to grant the relief sought in the petition is fully supported by the opinion of our Supreme Court in *Underwood v. Howland, Comr. of Motor Vehicles,* 274 N.C. 473, 164 S.E. 2d 2 (reversing the decision of this Court appearing in 1 N.C. App. 560). We quote from that opinion:

> "Plaintiff instituted this proceeding under G.S. 20-25 seeking judicial review of the facts surrounding the revocation of his operator's license and a determination that he is entitled to its return. Under that statute, any person who has been denied a driver's license or whose license has been cancelled, suspended,

or revoked, *except mandatory cancellations, suspensions and revocations,* has a right to file a petition in the superior court of the county wherein he resides; and said court is vested with jurisdiction and charged with the duty 'to take testimony and examine into the facts of the case, and to determine whether the petitioner is entitled to a license or is subject to suspension, cancellation or revocation of license under the provisions of this article.' G.S. 20-25. Discretionary revocations and suspensions may be reviewed by the court under this statute, while mandatory revocations and suspensions may not. * * *"

[2] Petitioner contends that following the 60-day suspension period, which terminated on 21 September 1964, he sent to DMV a SR-22 insurance certificate as provided by G.S. 20-279.17; that he "timely filed" said certificate; that because thereof DMV was not justified in permanently revoking petitioner's license.

G.S. 20-279.17 was enacted in 1953, was amended in 1955 and was repealed by Chapter 866 of the 1967 Session Laws. At times relevant to this appeal, subsection (a) thereof provided in pertinent part as follows: "Whenever the Commissioner suspends or revokes the license of any person under the provisions of article 2 of this chapter such license shall remain suspended or revoked and shall not at any time thereafter be *reinstated* nor shall any license be thereafter *issued* to such person, until permitted under the Motor Vehicle Laws of this State and not then unless and until he shall give and thereafter maintain, for the period provided by law, proof of financial responsibility * * *." (Emphasis ours)

Petitioner's contention has the effect of saying that if he "sent to" or "filed with" the DMV immediately following 21 September 1964 a "SR-22 insurance certificate," his driving privilege was automatically reinstated and the moving violations thereafter occurring in June and November 1965 and October 1966 did not occur during a period of suspension or revocation so as to justify mandatory revocation under G.S. 20-28.1. We do not agree with this contention. G.S. 20-279.17 clearly provided for the positive action of *reinstatement* of an operator's license following the period of suspension or revocation and provided that such license would remain suspended or revoked until *reinstated.* Although furnishing DMV with proof of financial responsibility was a prerequisite to reinstatement of a suspended or revoked license by the Commissioner, filing of a SR-22 insurance certificate would not automatically reinstate the license.

The trial judge had before him petitioner's driver's license record from DMV, duly certified pursuant to G.S. 8-35 and admissible in

evidence, *State v. Mercer,* 249 N.C. 371, 106 S.E. 2d 866, which record disclosed: On 21 July 1964, petitioner's license was suspended pursuant to G.S. 20-16(a)-9 following two convictions of speeding over 55 m.p.h. on 3 and 25 June 1964. On 20 July 1965, his license was revoked pursuant to G.S. 20-28.1 for one year because of conviction of a moving violation (Winston-Salem Municipal Court, speeding 50 m.p.h. in a 35 m.p.h. zone) on 28 June 1965 while license suspended or revoked. On 3 May 1966, his license was revoked pursuant to G.S. 20-28.1 for two years because of conviction of a second moving violation (Troy J.P. Court, driving on wrong side of road) on 13 November 1965 while license suspended or revoked; on 27 October 1966 his license was revoked permanently pursuant to G.S. 20-28.1 because of conviction of third moving violation (Recorders Court, Trenton, N. C., speeding 70 m.p.h. in a 60 m.p.h. zone) on 7 October 1966 while license suspended or revoked; on 22 November 1968 his license was permanently revoked again because of conviction of additional moving violation (Recorders Court, Kinston, N. C., driving without operator's license) on 30 September 1968. The record also shows that petitioner forfeited a bond in a South Carolina Magistrate's Court for speeding 72 m.p.h. in a 60 m.p.h. zone on 24 April 1967. The record further reveals the following convictions of petitioner after the second permanent revocation of his license on 22 November 1968: District Court, Raleigh, N. C., 10 June 1969, driving without license; District Court, Raleigh, N. C., 10 June 1969, speeding 58 m.p.h. in a 45 m.p.h. zone; and District Court, Kinston, N. C., 26 August 1969, driving without license.

The judgment of the superior court is fully supported by the conclusions of law and findings of fact, which findings are fully supported by the evidence.

Affirmed.

BROCK and GRAHAM, JJ., concur.